**VALET APARTMENT SERVICES, INC., Free Home Finder, Inc., Leasing Atlanta, Inc., and Nancy J. Sharp, Plaintiffs,**

v.

**The ATLANTA JOURNAL AND CONSTITUTION, a division of Cox Enterprises, Inc., and Voice Information Services, Inc., Defendants.**

Civ. A. No. 1:93–CV–1270–MHS.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 17, 1994.

Richard Young, Office of Richard Young, Norcross, GA, for plaintiffs.

Peter Crane Canfield, Dow Lohnes & Albertson, Atlanta, GA, Timothy J. O'Rourke, Dow Lohnes & Albertson, Washington, DC, pro hac vice, for defendants.

## ORDER

SHOOB, Senior District Judge.

This action is before the Court on defendants' motion to dismiss for failure to state a claim and on plaintiffs' motion to amend the complaint. For the reasons stated below, the Court grants defendants' motion and denies plaintiffs' motion.

Plaintiffs are three corporations and the individual 100% stockholder who provide apartment rental referral and related services and apartment management and leasing. Defendant Voice Information Services, Inc. ("VIS") is a wholly-owned subsidiary of Cox Newspapers, Inc., which is a wholly-owned subsidiary of Cox Enterprises, Inc. Defendant The Atlanta Journal and Constitution ("AJC") is a division of Cox Enterprises, Inc. Plaintiffs claim that defendants have conspired and attempted to monopolize the apartment rental referral industry in the Atlanta metropolitan area in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2 (1990), and that defendants have conspired to engage in unfair trade practices.

Plaintiffs assert that VIS is an apartment rental referral business that advertises for "leads" and electronically switches those "leads" to businesses like plaintiffs' for a fee. Defendants, on the other hand, claim that VIS was not an apartment rental referral business, but was in the business of providing telephonic accessing of classified advertisements, including plaintiffs', to be carried in the AJC.[1]

Plaintiffs allege that defendants denied them access to the classified advertisement section of the AJC on fair and reasonable terms. Plaintiffs claim that the AJC, after VIS was purchased by Cox Enterprises, began to advertise the apartment rental referral services of VIS in a classified advertisement section (Section 310) located at the beginning of the rental classified ad sections, while placing plaintiffs' classified ads in a section located at the end of the rental sections. Plaintiffs claim that the AJC refused to place plaintiffs' advertising for rental referral services in Section 310 although the AJC had previously run plaintiffs' advertisements there for eight years. Plaintiffs allege that by changing the placement of plaintiffs' advertisements, defendants "took" plaintiffs' "leads" and then offered to sell them back to plaintiffs. Plaintiffs contend that the defendants made this change in an attempt to greatly reduce the number and quality of calls for plaintiffs' services and thereby to

1. VIS has not been in operation since early 1992.

monopolize the apartment rental referral industry.

## I. *MOTION TO DISMISS*

Defendants move to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Defendants argue that plaintiffs' claim fails to allege facts showing a substantial nexus with interstate commerce required for any claim under the Sherman Act; that plaintiffs' complaint fails to allege the requisite element of "predatory or anticompetitive conduct"; and that plaintiffs' claim fails to allege the requisite element of "dangerous probability of successful monopolization." Furthermore, defendants argue that defendants cannot, as a matter of law, engage in a conspiracy. Finally, defendants argue that plaintiffs' claim of unfair trade practices must be dismissed because there is no private cause of action under the Federal Trade Commission Act, 15 U.S.C. § 45 (1988), which prohibits unfair methods of competition.

■ In *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir.1983), the Eleventh Circuit stated that

> an antitrust complaint must comprehend a so-called prima facie case, and enough data must be pleaded so that each element of the alleged antitrust violation can be properly identified. Conclusory allegations that defendant violated the antitrust laws and plaintiff was injured thereby will not survive a motion to dismiss if not supported by facts constituting a legitimate claim for relief.

Thus, to avoid defendants' motion to dismiss plaintiffs must have pleaded enough data so that each element of the alleged antitrust violations can be properly identified, and which data, if accepted as true, satisfy these elements. *Id.* at 996.

### A. *Nexus with Interstate Commerce*

■ To establish jurisdiction for any claim under § 2 of the Sherman Act, a plaintiff must allege that there is monopolization, an attempt to monopolize, or a conspiracy to monopolize "part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. A plaintiff must allege "either that the defendants' activity is itself in interstate commerce or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce." *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 241–42, 100 S.Ct. 502, 508–09, 62 L.Ed.2d 441 (1980). "Jurisdiction may not be invoked ... unless the relevant aspect of interstate commerce is identified." *Id.* at 242, 100 S.Ct. at 509.

■ Defendants argue that plaintiffs have not pleaded either facts or a conclusion that defendants' activity is in interstate commerce or has an effect on interstate commerce. Plaintiffs respond by moving to amend the complaint to allege that the AJC is circulated in most states and that persons from almost every state respond to advertisements in the AJC for the purpose of finding an apartment in the Atlanta area. Plaintiffs further allege that they have provided rental referral services to out-of-state residents.

The Court concludes that plaintiffs' complaint, even if amended, would fail to allege facts to show that defendants' alleged apartment rental referral services activity is in interstate commerce or has an effect on some other appreciable activity demonstrably in interstate commerce. Plaintiffs' complaint fails to identify the relevant aspect of interstate commerce allegedly affected by defendants' activity. Apartment rental in the Atlanta metropolitan area is a local, not an interstate activity, even if a potential renter lives outside the state. *See Alabama Homeowners, Inc. v. Findahome Corp.*, 640 F.2d 670, 674 (5th Cir.1981) ("not a scintilla" of evidence that the publication of real estate guides to two Alabama counties had a substantial effect on interstate commerce). Therefore, plaintiffs have failed to allege essential jurisdictional facts: that defendants' activity is either in interstate commerce or has an effect on some other activity in interstate commerce.

### B. *Attempt to Monopolize*

■ Defendants next argue that plaintiffs have not pleaded facts that, if accepted as

true, satisfy the elements of a claim under § 2 of the Sherman Act that defendants have attempted to monopolize. An attempt to monopolize claim has three elements: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, —— U.S. ——, ——, 113 S.Ct. 884, 890–91, 122 L.Ed.2d 247 (1993). Defendants argue that the conduct plaintiffs rely upon to support their claim is not anticompetitive or predatory and that plaintiffs have failed to allege facts to support a claim that defendants' conduct has a dangerous probability of achieving monopoly power.

### 1. *Predatory or Anticompetitive Conduct*

■ Plaintiffs allege that defendants' placement of their classified advertising in the "Rental Services" section rather than in the "Homes" or "Apartments" section is anticompetitive or predatory. Plaintiffs, however, have not alleged conduct that supports their claim of anticompetitive or predatory conduct by defendants. Plaintiffs have not alleged that the AJC has refused to accept plaintiffs' classified advertising in the classified section, non-classified advertising in any other section of the newspaper, or an advertising insert to be delivered in the newspaper. *Cf. Home Placement Service, Inc. v. Providence Journal Co.*, 682 F.2d 274 (1st Cir.1982) (reversed judgment in favor of a newspaper which refused to accept any advertisements for rental referral services which charge a fee). Thus, the facts alleged by plaintiffs cannot, as a matter of law, constitute predatory or anticompetitive conduct. *See Staff Research Assocs. v. Tribune Co.*, 346 F.2d 372, 374 (7th Cir.1965) (newspaper's placement of classified advertisements in a "Help Wanted—Employment Services" column instead of in a "Help Wanted" column does not constitute antitrust violation); *Syracuse Broadcasting Corp. v. Newhouse*, 319 F.2d 683, 686 (2d Cir.1963) (newspaper's unequal treatment of a radio station, owned by same corporation as the newspaper, for advertising space did not demonstrate antitrust violation).

### 2. *Dangerous Probability of Successful Monopolization*

■ The dangerous probability element [2] requires the definition of the relevant markets and an examination of market power—the market shares of participants in those markets, or similar data—that could support a conclusion of "dangerous probability" of monopolization. *Spectrum Sports*, —— U.S. at ——, 113 S.Ct. at 891; *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177, 86 S.Ct. 347, 350, 15 L.Ed.2d 247 (1965); *Ad–Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 849 F.2d 1336, 1341 (11th Cir.1987).

■ Here, plaintiffs do not allege any facts that could define the relevant markets or the market shares of participants in those markets that could support an allegation that defendants have a dangerous probability of monopolizing the apartment rental referral industry. The complaint does not refer to the number of actual or potential competitors or defendants' market power before the alleged attempt to monopolize began. *See Spectrum Sports*, —— U.S. at —— – ——, 113 S.Ct. at 890–92; *Brown Shoe Co. v. United States*, 370 U.S. 294, 324–28, 82 S.Ct. 1502, 1523–25, 8 L.Ed.2d 510 (1962); *McGahee v. Northern Propane Gas Co.*, 858 F.2d 1487, 1505 (11th Cir.1988), *cert. denied*, 490 U.S. 1084, 109 S.Ct. 2110, 104 L.Ed.2d 670 (1989); *Norton Tire Co. v. Tire Kingdom Co.*, 858 F.2d 1533, 1535 (11th Cir.1988). Plaintiffs have moved to amend the complaint to plead that the Atlanta metropolitan area is the relevant market and that the number of competitors in the apartment rental referral business was formerly ten or eleven and is now two or three. Plaintiffs further state that market share information is "difficult to estimate" before discovery. Even if plaintiffs were to amend the complaint, plaintiffs still have not pleaded sufficient facts about defendants' pre-attempt market share to support an allegation that defendants have a dangerous probability of monopolizing the apartment rental referral

**2.** Defendants do not argue that plaintiffs have

not alleged facts to prove the second element.

industry.[3] Thus, plaintiffs' complaint fails to allege facts that could support an allegation of the requisite element of "dangerous probability of successful monopolization."

### C. Unilateral Refusal to Deal/Essential Facilities Doctrine

Plaintiffs have moved to amend their complaint to include allegations that defendants' newspaper is an "essential facility" and that defendants have "refused to deal" with plaintiffs in violation of § 2 of the Sherman Act. Defendants argue that plaintiffs have not alleged conduct to support their claim of defendants' refusal to deal with plaintiffs.

■ The "essential facilities" doctrine has four elements: "(1) control of the essential facility by a monopolist; (2) a competitor's inability, practically or reasonably, to duplicate the essential facility; (3) the denial of use of the facility to a competitor; and (4) the feasibility of providing the facility to the competitor." *Thompson v. Metropolitan Multi-List, Inc.*, 1990-2 Trade Cas. (CCH) ¶ 69,173 at 64, 433, 1990 WL 145590 (N.D.GA.1990).

■ First, plaintiffs have not alleged facts that could show that any defendant is a monopolist. Newspapers compete with other mass media for advertising business, such as suburban daily circulation newspapers, weekly newspapers, free-distribution specialty publications, paid circulation local magazines, direct mail services, cable television, commercial television broadcast stations, and commercial radio stations. Furthermore, plaintiffs have not pleaded any facts to show why advertising in the classified advertising section of the AJC is essential or why other forms of advertising in the AJC or in other mass media is not feasible. Moreover, plaintiffs have not pleaded facts that show that defendants have refused use of the newspaper. In fact, the complaint admits that defendants have given plaintiffs access to the newspaper for advertising. Therefore, the Court concludes that the complaint fails to allege facts sufficient to state a claim on which relief may be granted as to the claim of a "unilateral refusal to deal" under the "essential facilities" doctrine.

### D. Conspiracy

■ Defendants also argue that, as a matter of law, defendant AJC and defendant VIS have not conspired to monopolize. "To establish a conspiracy to monopolize, a plaintiff is required to prove concerted action deliberately entered into with the specific intent of achieving a monopoly." *Todorov v. DCH Healthcare Authority*, 921 F.2d 1438, 1460 n. 35 (11th Cir.1991). In *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777, 104 S.Ct. 2731, 2744, 81 L.Ed.2d 628 (1984), the Supreme Court held that, as a matter of law, a corporation and its wholly-owned subsidiaries are incapable of conspiring with each other for purposes of § 1 of the Sherman Act. The *Copperweld* principle applies also to § 2 conspiracy claims. *See Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F.Supp. 832, 839 (S.D.N.Y.1988).

Defendant AJC is an unincorporated division of Cox Enterprises and defendant VIS is a wholly-owned subsidiary of Cox Enterprises. Therefore, plaintiffs' conspiracy allegations fail to state claims upon which relief can be granted.

### E. Unfair Trade Practices

■ Finally, defendants argue that there is no private cause of action under § 5 of the Federal Trade Commission Act ("FTCA") which prohibits "unfair methods of competition." The Court agrees. *Jeter v. Credit Bureau*, 754 F.2d 907, 912 n. 5 (11th Cir. 1985), *on rehearing*, 760 F.2d 1168, 1174 n. 5 (11th Cir.1985). Accordingly, plaintiffs have failed to state a claim on which relief may be granted under § 5 of the FTCA.

### II. MOTION TO AMEND

■ "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so

---

**3.** Plaintiffs have not persuaded the Court that market share information cannot be estimated without discovery.

requires." Fed.R.Civ.P. 15(a); *Nolin v. Douglas County*, 903 F.2d 1546, 1550 (11th Cir.1990). District courts have only limited discretion to deny a party leave to amend the pleadings. *Espey v. Wainwright*, 734 F.2d 748 (11th Cir.1984); *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594 (5th Cir. 1981). Thus, the Court is constrained to allow a plaintiff leave to amend unless there is substantial countervailing reason. *Id.* In determining whether to grant leave to amend, a court may consider undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility of the amendment. *Nolin*, 903 F.2d at 1550 (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). After reviewing the motion and responses in this action, the Court concludes that the amendment would be futile and therefore denies plaintiffs leave to amend.

## III. *CONCLUSION*

In summary, for all the reasons stated above, the Court DENIES plaintiffs' motion to amend the complaint [# 13]; GRANTS defendants' motion to dismiss both counts of plaintiffs' complaint for failure to state a claim on which relief may be granted [# 5]; and DISMISSES this action.

IT IS SO ORDERED.

### *JUDGMENT*

This action having come before the court, Honorable Marvin H. Shoob, United States District Judge, for consideration of defendants' motion to dismiss, and the court having granted defendants' motion, it is

**Ordered and Adjudged** that the plaintiffs recover nothing in this action, that their complaint be, and the same hereby is **dismissed,** and that the defendants recover of the plaintiffs their costs of action.

Dated at Atlanta, Georgia, this 19th day of August, 1994.