**Mark H. FELDMAN, Pro Se, Plaintiff,**

v.

**PALMETTO GENERAL HOSPITAL, INC., d/b/a Lifemark Hospitals of Florida, Inc., et al., Defendants.**

No. 94–2458–CIV.

United States District Court, S.D. Florida.

Sept. 25, 1997.

Mark D. Feldman, Miami Lakes, FL, pro se.

Alan D. Lash, Lash & Goldberg, Miami, FL, for Palmetto Gen. Hosp., Inc., American Medical, William A. Barrett, John Casey, Robert O'Leary, Edward Tudanger, A.M.I. Owned Hosp.

Mary Katherine Hunter, Keith R. Gaudioso, O'Connor & Meyers, P.A., Coral Gables, FL, for Jay Stein.

Steven E. Siff, McDermott Will & Every, Miami, FL, for Joint Commission.

### *FINAL ORDER OF DISMISSAL*
FERGUSON, District Judge.

**THIS CAUSE** is before the Court on a motion of the defendants AMI and Palmetto General Hospital to dismiss plaintiffs second amended complaint [D.E. 124].

Mark H. Feldman, a physician, brings this suit against Palmetto General Hospital, Inc., d/b/a Lifemark Hospitals of Florida, Inc. ("PGH"), American Medical International, Inc., their officers, administrators and attorneys ("the AMI and Palmetto defendants"). Additionally, Feldman asserts claims against unknown and unnamed co-conspirators, and

board members and medical staff of the defendant hospital.

Dr. Feldman is a licensed podiatrist who provides foot care and treatment in Dade County, Florida. In 1992, he applied for staff privileges with PGH. By letter dated November 19, 1992, PGH denied Feldman's application for Medical Staff Membership and clinical privileges because he "failed to demonstrate an ability to work with others in a hospital setting." Dr. Feldman countered by filing a 50–page class action complaint alleging causes of action under the civil rights laws, antitrust laws, and Florida statutory and common law. He later amended the complaint to drop the class action allegations and civil rights count. This Court dismissed the first amended complaint without prejudice with leave to file a second amended complaint not to exceed 25 double-spaced pages. On November 14, 1995, the plaintiff filed a 25–page second amended complaint along with a 22–page memorandum of law. In the ten-count complaint, Dr. Feldman alleges a "concerted conspiracy between the hospitals, their medical staffs, the orthopedic and non-orthopedic surgeons and other medical doctors to prevent plaintiff from obtaining surgical privileges and patient referrals from the hospital emergency rooms." Second Amended Complaint ¶ 45.[1]

Dr. Feldman claims in Count I, as he did in the 1979 lawsuit, that the defendants violated section 1 of the Sherman Act.[2] He alleges that the defendants conspired to boycott the plaintiff in his application for staff and surgical privileges. "The boycott was accomplished through a concerted refusal to deal with the plaintiff and by their intentional fabrication of the fraudulent review process in the evaluation of plaintiff's application." Second Amended Complaint ¶ 56.

Dr. Feldman claims in Count II, as he did in the 1979 lawsuit, that the defendants violated section 2 of the Sherman Act.[3] This time he alleges that "the defendants conspired to and did monopolize the ER call referral of patients." Second Amended Complaint ¶ 60. According to Dr. Feldman, the defendants through "conspiratorial activities ... monopolize[d] ER call services in favor of orthopedic surgeons and against the plaintiff." Second Amended Complaint ¶ 61.

The AMI and Palmetto defendants move to dismiss the complaint for failure to state a claim under the Sherman Act. Further, they contend Dr. Feldman lacks standing to assert the antitrust claims.

## APPLICABLE LEGAL PRINCIPLES

Sections 1 and 2 of the Sherman Act are actionable by private individuals only through sections 4 and 16 of the Clayton Act. 15 U.S.C. §§ 15 and 26.[4] Section 4 of the

---

1. Dr. Feldman brought a similar lawsuit against 17 hospitals and 49 doctors in South Florida. *Feldman v. Jackson Memorial Hosp.*, 571 F.Supp. 1000 (S.D.Fla.1983), *aff'd*, 752 F.2d 647 (11th Cir.1985), *cert denied.* 472 U.S. 1029, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985). All but the Sherman Act claims were disposed of before trial. After five weeks of testimony and more than 80 witnesses, Judge Kehoe granted the defendants' motion for directed verdict finding that Dr. Feldman "failed to adduce sufficient evidence to permit the jury to consider [the antitrust] issues." 571 F.Supp. at 1005.

   The defendants in this case, also South Florida health care providers, were not named as defendants in the Jackson Memorial Hospital case.

2. Section 1 provides, in pertinent part, that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1.

3. Section 2 provides, in pertinent part, that "[e]very person who shall monopolize, or at-

tempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony." 15 U.S.C. § 2.

4. The analysis of antitrust injury for a section 16 claim is the same as for a section 4 claim. *Todorov v. DCH Healthcare Authority*, 921 F.2d 1438, 1451 (11th Cir.1991). If a plaintiff has standing under section 4, he will also have standing under section 16; however, a plaintiff may have standing to bring an action under section 16 but not have standing under section 4. *Id.* Dr. Feldman brings his claims for relief under sections 4 and 16 of the Clayton Act. However, in his prayer for relief he seeks "compensatory and punitive damages caused by the conspiracy which resulted in the boycott of the plaintiff and the monopoly of the defendants." Second Amended Complaint ¶ 68. Section 16 of the Clayton Act provides for injunctive relief. Since the relief sought by the plaintiff is money damages, the Court will analyze his standing to bring his antitrust claims under section 4.

Clayton Act authorizes suits for treble damages by "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a). However, "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Associated Gen. Contractors of Cal. Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534, 103 S.Ct. 897, 906, 74 L.Ed.2d 723 (1983). Private individuals who do not qualify for Clayton Act standing may not bring a damage action for antitrust violations. *RE/ Max Intern. v. Realty One, Inc.*, 900 F.Supp. 132 (N.D.Ohio 1995).

Standing to sue under the Sherman and Clayton Acts is a question of law. *Austin v. Blue Cross and Blue Shield of Alabama*, 903 F.2d 1385, 1387 (11th Cir.1990). In deciding whether a plaintiff has standing to bring an antitrust action, a court must examine the allegations contained in the complaint. *Id.* A plaintiff has standing where he alleges facts showing that he (1) has suffered an "antitrust injury" and (2) that he is "an efficient enforcer of the antitrust laws." *Todorov v. DCH Healthcare Authority*, 921 F.2d 1438, 1449 (11th Cir.1991).

## A. Antitrust Injury

In order to maintain an antitrust action for damages, a plaintiff must show more than an injury linked to a violation of the antitrust laws; he must prove an antitrust injury. An antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). Therefore, an antitrust plaintiff must allege and show that his own injury coincides with the public detriment from the alleged viola-

tion thereby increasing the likelihood that public and private enforcement will further the same goal of increased competition. *Todorov*, 921 F.2d at 1450.

Dr. Feldman's alleged injuries include (1) lost patient revenues and denial of hospital investment programs; (2) nonparticipation in Health Maintenance Organizations (HMO), Preferred Provider Organizations (PPO), and Individual Practice Organizations (IPA); and (3) blacklisting.[5] These injuries do not amount to antitrust injuries. A plaintiff "simply looking to increase his profits, like any competitor" does not have antitrust standing. *Todorov* at 1453–55. *See also Leak v. Grant Medical Center*, 893 F.Supp. 757, 763 (S.D.Ohio 1995) *aff'd* 103 F.3d 129 (6th Cir.1996) (no antitrust injury even where some patients' managed care insurance plans limit them to services offered by the defendant); *Levine v. Central Florida Medical Affiliates, Inc.*, 864 F.Supp. 1175, 1180 (M.D.Fla.1994)(alleged blacklisting not an antitrust injury where plaintiff had privileges and could compete at other hospitals).

Here, Dr. Feldman's harm is not to competition within the marketplace but to himself as an individual doctor. It is a well settled principle that the antitrust laws were enacted for "the protection of *competition*, not *competitors*." *Brunswick*, 429 U.S. at 489, 97 S.Ct. at 697, 50 L.Ed.2d 701 (emphasis original) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962)). Without a showing of actual adverse effect on competition, a plaintiff cannot make out a case under the antitrust laws. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 31, 104 S.Ct. 1551, 1568, 80 L.Ed.2d 2 (1984).[6]

## B. Efficient Enforcer

Efficient enforcer factors necessary for antitrust standing are those factors "that

---

**5.** Dr. Feldman alleges that he has been "blacklisted" and is prevented from "obtaining hospital privileges and ER call at any hospital in the United States." Second Amended Complaint ¶ 34. Inconsistently, he admits that he has privileges at three local hospitals. Second Amended Complaint ¶ 53.

**6.** Dr. Feldman attempts to establish an antitrust injury by alleging that the "conspiracy restrains

trade and commerce by eliminating an economic competitor" and "public injury to competition". Second Amended Complaint ¶¶ 58, 64. These allegations do not establish an antitrust injury. *See Mathews v. Lancaster General Hosp.*, 883 F.Supp. 1016, 1045 (E.D.Pa.1995) *aff'd* 87 F.3d 624 (3rd Cir.1996) (despite attempts to use terms of injuries to competition, the harm alleged by the plaintiff is essentially harm to himself).

might be useful in determining whether a party is a proper plaintiff in a particular case." *Todorov,* 921 F.2d at 1451. Those factors include (1) the directness or indirectness of the asserted injury; (2) whether there exists an identifiable class of persons motivated to vindicate the public interest in antitrust enforcement; (3) the nature of the damages; (4) the importance of avoiding duplicate recoveries; and (5) whether the plaintiff can enforce an antitrust judgment. *Id.* at 1451–52. Dr. Feldman's asserted interest is that he has been denied privileges; not that podiatrists generally have been denied privileges or that patients have been unable to obtain podiatric services at competitive prices. There are others, patients or insurers, who would be a more appropriate class of persons to vindicate the public interest in maintaining prices and services at competitive levels. Further, the plaintiff has not shown by allegations that he, individually, could enforce an antitrust judgment for damages, if entitlement to one could be proved.

## CONCLUSION

In the earlier lawsuit it was decided, substantively, that Dr. Feldman failed to prove a conspiracy, market impact or antitrust damages under section 1 of the Sherman Act and failed to prove a monopoly under section 2 of the Act. Without reaching the evidence, this Court determines that the plaintiff has not pled standing and that given another opportunity he could not plead that he has standing to bring this antitrust action. *See Valet Apt. Serv. v. Atlanta Journal & Const.,* 865 F.Supp. 828 (N.D.Ga.1994) (antitrust plaintiff denied leave to amend complaint where amendment would be futile).[7] For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the plaintiff lacks antitrust standing and accordingly Counts I and II are **DISMISSED** with prejudice. In addition to the federal claims, Dr. Feldman alleges various state statutory and common law claims. The Court declines to exercise supplemental jurisdiction over the state claims asserted in Counts III–X.[8] They are DISMISSED without prejudice to refile in the state court. All pending motions are dismissed as moot by this Final Order of Dismissal.

---

7. No determination is made whether this action is barred by the doctrine or res judicata or other preclusion principles.

8. In the 1979 case, the court similarly declined to exercise pendent jurisdiction over the the state claims after finding no liability under federal laws.