**NORTE CAR CORP., et al., Plaintiffs,**

v.

**FIRSTBANK CORP., et al., Defendants.**

**No. 97–2645 (DRD).**

United States District Court,
D. Puerto Rico.

Sept. 30, 1998.

Edilberto Berrios–Perez, Hato Rey, PR, for Plaintiffs.

Antonio A. Arias–Larcada, Raul M. Arias–Marxuach, San Juan, PR, for Defendants.

**OPINION AND ORDER**

DOMINGUEZ, District Judge.

Pending before the Court is Defendant Firstbank Corporation's (Defendant) motion

for summary judgment against Plaintiff Norte Car, (Docket No. 22), and Plaintiff's motion for partial summary judgment, (Docket No. 30). For the reasons explained below, Defendant's motion is granted in part/denied in part. All of Plaintiff Norte Car's claims except for one are dismissed without prejudice.[1] Plaintiffs' motion for summary judgment is denied.

## I. Brief Factual Background

Norte Car is a car dealership in Puerto Rico. FirstBank is a bank existing under the laws of Puerto Rico. Norte Car's complaint describes an elaborate scheme in which FirstBank, Mitsubishi Motor Sales of Puerto Rico, Baldrich Associates, and Monumental Life Insurance, and principals in these businesses worked together to obtain for themselves the profits of Norte Car's business. In 1995, Norte Car and FirstBank entered into a financing arrangement for the financing of Norte Car's purchase of cars for Norte Car to sell to its customers. The arrangement was memorialized in a "floor plan agreement." Additional details regarding the arrangements among the parties in the alleged scheme are provided below as necessary.

## II. Summary Judgment Standard

Both parties have titled their motions as motions for summary judgment. First-Bank's motion closely resembles a motion under Rule 12 of the Federal Rules of Civil Procedure because it requests judgment based on Norte Car's failure to properly allege its causes of action. Under Rule 12 of the Federal Rules of Civil Procedure, "if matters outside the pleading are presented to and not excluded by the court, the [Rule 12] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12. *See Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 177 (1st Cir.1997); *Garita v. Ponce Fed. Bank*, 958 F.2d 15, 18–19 (1st Cir.1992); *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d

81, 83 (1st Cir.1997) (citing *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 177 (1st Cir.1997)). As Norte Car and FirstBank have submitted documents outside the pleadings in support of their positions, and the Court will rely in part on those documents, this Court will consider the pending motions as motions for summary judgment.[2] *Vega–Rodriguez*, 110 F.3d at 177; *Garita*, 958 F.2d at 18–19.

Summary judgment shall be granted where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue is genuine if it 'must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.'" *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 673 (1st Cir.1996) (citing *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)). "For Rule 56 purposes we read the record in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Allstate Ins. Co. v. Occidental Int'l, Inc.*, 140 F.3d 1, 2 (1st Cir.1998) (citing *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir.1997)). "An inference is reasonable only if it can be drawn from the evidence without resort to speculation." *Mulero–Rodriguez*, 98 F.3d at 672 (citing *Frieze v. Boatmen's Bank of Belton*, 950 F.2d 538, 541 (8th Cir.1991)). "The materiality requirement signifies that the factual controversy must pertain to an issue which might affect the outcome of the suit under the governing law." *Allstate*, 140 F.3d at 2.

## III. The Allegations and Defenses

Norte Car alleges that FirstBank committed four antitrust wrongs against Norte Car:

---

1. FirstBank's motion for summary judgment is directed toward Norte Car's claims. It does not discuss the claims of the other plaintiffs. While those claims may be subject to a similar dismissal, they were not the subject of FirstBank's motions, and are not addressed herein.

2. Consideration of these motions for summary judgment does not foreclose the possibility that the Court will entertain another motion for summary judgment later in these proceedings.

1. Norte Car alleges that FirstBank imposed illegal conditions upon Norte Car in connection with the floor plan financing arrangements. Norte Car alleges that FirstBank required that Norte Car offer to FirstBank the opportunity to provide Norte Car with any other financing or banking service that Norte Car might need. In the complaint, Plaintiffs allege that "First Bank imposed upon Norte Car, as a condition to the agreement for floor plan financing that Norte Car would have to first seek and offer to First-Bank any other financing and/or banking service for itself or its customers (and would abstain and not pursue or obtain any [sic] banking service or facility from any other banking institution)." (Complaint, ¶ 33.) Norte Car does not elaborate on the extent of the financing or banking service that they required. Norte Car agreed not to "maintain a checking account with a depositary institution other than the Bank" without the written consent of FirstBank. (Docket No. 30, Ex. 3A, at 6.) In its complaint, Norte Car does not say whether it requested such consent and if it did, if such consent was denied.

2. Norte Car alleges that FirstBank required that Norte Car refer to First-Bank Norte Car's customers who needed financing or banking services.

3. Norte Car also alleges that FirstBank required Norte Car to submit to Baldrich Associates, an insurance agent, all of the single interest insurance generated by Norte Car's business, and to Monumental Life Insurance all of the credit life insurance generated by Norte Car's business. The identity of the persons who needed such insurance is unclear from the documents presented to the Court. Did Norte Car need to buy this insurance? Norte Car and its customers? Norte Car's customers but not Norte Car?

4. Norte Car alleges that FirstBank required, as a condition of the floor plan financing agreement, that Norte Car give FirstBank a right of first refusal as to the retail paper arising from Norte Car's automobile sales. This condition is memorialized in the financing agreement documents: "The undersigned understands that it is a condition of this Agreement that the undersigned grant you the right of first refusal, which right is hereby granted, to finance the retail installment paper generated by the sale by the undersigned of the Vehicle(s)." (Complaint, ¶ 34.) Norte Car alleges that the commissions paid by First-Bank to Norte Car for referring this business to FirstBank were allegedly significantly lower than those paid by FirstBank's competitors for similar referrals.

These claims by Norte Car against First-Bank are made against a background of allegations that FirstBank participated in a conspiracy with other defendants to take control of the profits of Norte Car's business. These allegations, as they relate to Norte Car and apart from the alleged wrongs outlined above, are completely lacking in factual support in the present record. Making sense of Norte Car's allegations is complicated by the fact that Norte Car, Mitsubishi Motor Sales of the Caribbean, and Mitsubishi-related defendants have agreed to arbitrate the claims against them, and their claims are no longer pending before this Court.[3]

 The Court concludes that Norte's pleadings fail to comply with Rules 8 and 9 of the Federal Rules of Civil Procedure. Pursuant to Rule 8, a Plaintiff's pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to the relief." Fed.R.Civ.P. 8. "It is not proper, however, to assume that the plaintiff can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged." *Columbia Steel Casting Co. v. Portland General Electric Co.*, 1992 WL 154199, at *2–*4 (D.Or. June 19, 1992) (dismissing antitrust complaint with permission to replead when com-

---

3. The complaint against Baldrich Associates has been dismissed.

plaint failed to satisfy Rule 8). Pursuant to Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). To the extent Norte Car is attempting to allege that FirstBank defrauded it, Norte Car's complaint is deficient. *Commonwealth v. Derry Construction Co.,* 617 F.Supp. 940, 941 (W.D.Pa.1985) (complaint defective to extent plaintiff failed to plead with particularity acts of fraud in furtherance of antitrust conspiracy). As Norte Car appears to be allegeding that FirstBank engaged in unjust and fraudulent business practices to induce Norte Car to pursue certain business options, Rule 9(b) is applicable to the present pleadings. Norte Car's conspiracy claims are dismissed without prejudice for failure to comply with Rules 8 and 9(b) of the Federal Rules of Civil Procedure. *See Maldonado v. Dominguez,* 137 F.3d 1, 12 (1st Cir.1998) (dismissing pleadings when complaint failed to set forth specific facts in support of necessary element of scienter in securities fraud action). Norte Car may replead these causes of action within 30 days of the date of notice of this order. *See, e.g., Barry v. St. Paul Fire & Marine Ins. Co.,* 555 F.2d 3, 12 (1st Cir.1977) (court has authority to dismiss complaint without prejudice pursuant to Rule 9(b); plaintiffs may replead complaint).

FirstBank's motion for summary judgment seeks summary judgment on the following legal grounds:

1. Norte Car failed to meet the heightened evidentiary standard appropriate in an antitrust action when the alleged antitrust actions do not make economic sense. (Docket No. 30, at 5–6.)[4]

2. The right-of-first-refusal provision to "finance retail installment paper generated by the sale by [Norte Car] of the Vehicle(s)" is not an illegal tie because

a. Such agreement was made only between FirstBank and Norte Car; thus it did not involve the concerted conduct among actors necessary to allege a violation of Section One of the Sherman Act. (Docket No. 22, at 7–8.)

b. Plaintiffs do not allege that FirstBank has monopoly or market power in any relevant market, which in any case, Plaintiffs have failed to define. (Docket No. 22, at 8, 10.) FirstBank in fact does not have any market control of the financing business. (Docket No. 22, at 12.)

c. Plaintiffs have failed to allege that FirstBank's action constituted a horizontal restriction. (Docket No. 22, at 9.)

3. There is no antitrust injury caused by the financing agreement. FirstBank is entitled to insure its loan investments through the insurance company of its choice.[5] (Docket No. 22, at 11.)

4. The right-of-first-refusal provision does not violate the Bank Holding Company Act because it falls within conduct explicitly permitted by the act and is a common practice in the banking industry. (Docket No. 22, at 11, 13.)

5. The Court should not exercise pendent jurisdiction over Plaintiff's claims of false representations and breached promises because the federal claims against FirstBank should be dismissed. (Docket No. 22, at 14–15.)

The analytical bases of Norte Car's antitrust and trade regulation allegations are not clear from its complaint or memorandum. Norte Car has taken a scattershot approach in making allegations against FirstBank. Nonetheless, the Court has gleaned from the complaint that Norte Car alleges that FirstBank has violated Sections One and Two of the Sherman Act, the Clayton Act, the Robinson–Patman Act, the National Bank Holding Company Act, and various complementary Puerto Rico laws. The Court will outline some basic principles of antitrust law, then

---

**4.** The Court does not determine whether a heightened evidentiary standard should be applied in this action. As is explained below, the pleadings are deficient and insufficient; hence, the evidence in this action need not be evaluated except for the floor plan agreeing.

**5.** This defense again raises the Court's question as to exactly which party in the underlying transactions required insurance.

examine Plaintiff's antitrust allegations in light of the exposed principles.[6]

#### IV. Subject Matter Jurisdiction

As a preliminary matter, the Court must have subject matter jurisdiction to hear federal antitrust claims. Under the Sherman Act, the trade or commerce affected by the alleged wrongdoings must involve interstate claims that either affect the flow of commerce or affect commerce. "To establish federal jurisdiction in this case, there remains only the requirement that [First-Bank's] activities which allegedly have been infected by a [antitrust violation] be shown 'as a matter of practical economics' to have a not insubstantial effect on the interstate commerce involved." *McLain v. Real Estate Bd. of New Orleans*, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980) (citations omitted). The Clayton Act's jurisdictional requirements are similar to those of the Sherman Act. The Robinson–Patman Act applies to persons engaged in commerce and acting in the course of such commerce. 15 U.S.C. § 15. Norte Car alleges that its business of importing cars to Puerto Rico and selling them has been damaged by First-Bank's activities. On a preliminary review, Norte Car seems to satisfy the jurisdictional requirements.

#### V. Antitrust Overview

The Sherman Act, 15 U.S.C. §§ 1–7, is the nation's leading antitrust statute. Section One prohibits concerted activity that produces restraints of trade, 15 U.S.C. § 1, and Section Two prohibits unilateral and concerted conduct that produces either a monopoly or a monopsony, or that constitutes an attempt to achieve such power, 15 U.S.C. § 2. Puerto Rico is treated as a state for the purposes of the Sherman Act. *Cordova & Simonpietri Ins. Agency, Inc. v. Chase Manhattan Bank, N.A.*, 649 F.2d 36, 37 (1st Cir.1981). *See Borschow Hosp. & Med.*

*Supp., Inc. v. Cesar Castillo, Inc.*, 96 F.3d 10 (1st Cir.1996); *SAS of P.R., Inc. v. Puerto Rico Telephone Co.*, 48 F.3d 39 (1st Cir.1995).

Antitrust jurisprudence demands three elements be alleged with sufficient clarity to withstand a motion to dismiss a Sherman Act claim: (1) the existence of a contract, combination or conspiracy among two or more separate entities that (2) unreasonably restrains trade and (3) affects interstate or foreign commerce. *Standard Oil Co. v. United States*, 221 U.S. 1, 52, 31 S.Ct. 502, 512, 55 L.Ed. 619 (1911). In order to maintain a Section One claim, "a conscious commitment to a common scheme designed to achieve an unlawful objective" must be demonstrated. *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 1470, 79 L.Ed.2d 775 (1984).

Section Two prohibits both monopolization and attempts to achieve monopolization. To maintain a Section Two claim, a plaintiff must allege that a defendant either has or tried to achieve a monopolization in the defendant's market,[7] or that it worked with another entity to achieve monopolization in that entity's market. *Ocean State Physicians Health Plan, Inc. v. Blue Cross/Blue Shield of R.I.*, 883 F.2d 1101, 1110 (1st Cir. 1989). A plaintiff can satisfy this requirement if it introduces facts that a defendant has come dangerously close to acquiring a monopoly in any market in which it deals with the plaintiff.

In order to sustain an attempted monopolization claim, three elements must be pleaded and proven:

1. "a specific intent to monopolize a relevant market;

2. the use of anticompetitive conduct to accomplish the unlawful purpose; and

---

6. An excellent comprehensive discussions on the general principles of antitrust law may be found in J.O. von Kalinowski, *Antitrust Laws and Trade Regulation* (2d ed.1998), and P. Areeda & H. Hovenkamp, *Antitrust Law* (1989).

7. Norte Car vaguely suggests that the relevant market is the market for services related to the sales of low-value (less that $10,000) cars in

Puerto Rico. The Court makes no determination that this definition of a market comes anywhere near the precision needed for a the antitrust definition of market, except to point out that none of the facts alleged support a finding that FirstBank is involved in any market beyond the financial and banking markets.

3. a dangerous probability that the attempt will succeed."

1 Julian O. von Kalinowski et al., *Antitrust Laws & Trade Regulation* § 2.03[2] (2d ed.1998). *See CVD, Inc. v. Raytheon Co.,* 769 F.2d 842, 851 (1st Cir.1985). The intent to do harm to competition, not just to a competitor, must be pleaded and demonstrated. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 601, 105 S.Ct. 2847, 2858, 86 L.Ed.2d 467 (1985). In order to sustain a conspiracy to monopolize claim, a plaintiff must plead and prove the existence of a conspiracy, an overt act in furtherance of the conspiracy, and an intent to monopolize. *Lee v. Life Ins. Co. of N.A.,* 829 F.Supp. 529, 540 (D.R.I.1993) (citing cases).

Section One of the Sherman Act prohibits a seller from "tying" the sale of one product to the purchase of a second product if the seller thereby avoids competition on the merits of the "tied" product. *See* 15 U.S.C. § 1 ("Every contract ... in restraint of trade or commerce ... is declared to be illegal."); *Data General Corp. v. Grumman Systems Support Corp.,* 36 F.3d 1147, 1178 (1st Cir.1994). "There are essentially four elements to a per se tying claim: (1) the tying and the tied products are actually two distinct products; (2) there is an agreement or condition, express or implied, that establishes a tie; 3) the entity accused of tying has sufficient economic power in the market for the tying product to distort consumers' choices with respect to the tied product; and (4) the tie forecloses a substantial amount of commerce in the market for the tied product." *Borschow Hosp. & Med. Supp.,* 96 F.3d at 17.

In order to sustain a claim of illegal tying, at least two *separate* products must be involved. *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 462, 112 S.Ct. 2072, 2079–2080, 119 L.Ed.2d 265 (1992). Products are separate if there is a separate demand for each product apart from the other product. *Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. 2, 19, 104 S.Ct. 1551, 1562, 80 L.Ed.2d 2 (1984). The Eleventh Circuit has found that certain financing and loans arrangements are not two separate products. *McGee v. First Federal Sav. & L. Ass'n,* 761 F.2d 647, 648 (11th Cir.1985) (per curiam).

Certain tying arrangements are per se illegal. "In order for a tying arrangement to be per se unlawful, the seller must have appreciable economic power in the market for the tying product to enable it to restrain trade in the market for the tied product." *Antitrust Laws* ¶ 22.02[4][a]. In *U.S. Steel Corp. v. Fortner Enterprises.,* 429 U.S. 610, 620, 97 S.Ct. 861, 868, 51 L.Ed.2d 80 (1977), the Supreme Court stated that the issue was "whether the seller has the power, within the market for the tying product, to raise prices or to require purchasers to accept burdensome terms that could not be exacted in a completely competitive market." Numerous grounds are available for establishing market power, including that the defendant has sufficient market share to force buyers to purchase the tied product, a high percentage of the seller's customers have accepted the tying arrangement without a good explanation, or the defendant has a competitive advantage due to special characteristics of the tying product or legal barriers. *Antitrust Laws* ¶ 22.02[4][b]. If a defendant required a buyer to buy other items from a designated third party, an illegal tying arrangement may exist.

Norte Car alleges facts that suggest that FirstBank caused Norte Car to enter into an exclusive dealing contract. "An exclusive dealing arrangement is an agreement where a buyer agrees to purchase products or services from one seller for an extended period of time." *Antitrust Laws,* ¶ 23.01[1]. For an exclusive dealing arrangement to violate Section One of the Sherman Act, the arrangement has to be an "unreasonable restraint of trade". 15 U.S.C. § 1. Exclusive dealing arrangements are evaluated under the rule of reason standard. *Tampa Elec. v. Nashville Coal Co.,* 365 U.S. 320, 333–35, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961); *United States Healthcare, Inc. v. Healthsource, Inc.,* 986 F.2d 589, 595 (1st Cir.1993). In order to determine if a restraint is unreasonable under a rule of reason analysis, the relevant market must be determined.

■ Norte Car alleges facts that suggest that FirstBank required it to enter into a reciprocal dealing arrangement with First-Bank. "Reciprocal dealing is an arrangement where two parties face each other as both buyer and seller and one party agrees to buy the other party's goods on condition that the second party buys other goods from it." *Antitrust Laws* ¶ 23.03[1]. Coercive reciprocal dealing may violate Section One of the Sherman Act. *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 511 (3d Cir.1998)

■ The Clayton Act governs tying and exclusive dealing arrangements, 15 U.S.C. § 14, other antitrust concerns not covered by the Sherman Act, and, along with the Robinson–Patman Act, price discrimination, 15 U.S.C. § 12.[8] Section Three of the Clayton Act, which makes certain tying arrangements illegal, only applies to the sale of goods or commodities; it does not apply to the sale of services, such an financial services, or to money loans. *See Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319, 1331 (6th Cir.1983); *Satellite Television & Assoc'd Resources, Inc. v. Continental Cablevision of Va., Inc.*, 714 F.2d 351, 358 (4th Cir.1983) (Clayton Act does not apply to services); *E.T. Barwick Indus., Inc. v. Walter E. Heller & Co.*, 692 F.Supp. 1331, 1343 (D.Ga.1987); *United States v. Investors Diversified Serv.*, 102 F.Supp. 645, 647–48 (D.Minn.1951) (Section 3 of the Clayton Act does not apply when defendant conditioned loan on purchase of insurance); *see also Advo, Inc. v. Philadelphia Newspapers, Inc.*, 51 F.3d 1191, 1195 n. 3 (3d Cir.1995) (newspaper advertising is service, not commodity;

thus, it is not covered by Clayton Act). Because Norte Car's allegations only involve services, not goods or commodities, Norte Car cannot sustain its Clayton Act claims, which are hereby dismissed without prejudice.

■ Similarly, a Section 2(a) claim under the Robinson–Patman Act may only be made when the alleged act involved commodities. 15 U.S.C. § 13(a). *See National Information Servs., Inc. v. T.R.W., Inc.*, 1992 WL 715632, at *11 (D.Or. Sept.9, 1992) (credit report is not commodity; thus, not covered by Robinson–Patman Act). As Norte Car's claims only involve services, not commodities, Norte Car cannot sustain a Robinson–Patman claim against FirstBank.[9] If Plaintiffs could allege a cause of action against First-Bank under the Robinson–Patman Act, they would have set forth only a secondary-line claim. A primary-line claim arises when an illegal action causes harm to competition by harming the competitors of the seller. A secondary-line claim arises when the seller's customers are harmed. Even if Robinson–Patman covered financial services, Norte Car has failed to allege that FirstBank engaged in price discrimination with regard to its banking or credit services.[10] Norte Car's Robinson–Patman claims against FirstBank are dismissed without prejudice.

### VI. Sherman Act Allegations

■ As described above, Plaintiffs have alleged that four acts of FirstBank constitute antitrust violations. Norte Car alleges that FirstBank has committed several antitrust violations of Sections One and Two of the

8. A private litigant may not bring an action for treble damages under the Robinson–Patman Act because this is not one of the "antitrust laws" recognized by the Clayton Act as granting a private right of action for treble damages. *See Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 375–76, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958). However, an act that violates the Robinson–Patman Act may also violate Section 2 of the Clayton Act, which does allow a private right of action.

9. Norte Car's claim that FirstBank's commissions for the referral of retail paper cannot allege a price discrimination claim because Norte Car does not argue that FirstBank paid its own cus-

tomers different rates of commission, only that FirstBank's rates were lower than those paid by other area banks. *See AA Poultry Farms, Inc. v. Rose Acre Farms*, 881 F.2d 1396, 1399 (7th Cir. 1989) (Easterbrook, J.).

10. Norte Car emphasizes that some of the injuries alleged are secondary-line injuries. In secondary-line injury cases, a plaintiff needs only to show injury to a competitor, not to competition. The secondary-line analysis advocated by Norte Car is only appropriate for Clayton Act and Robinson–Patman Act claims, which are not applicable here, as stated above. *See Coastal Fuels of P.R. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 191–92 (1st Cir.1996).

Sherman Act: tying, exclusive dealing, reciprocal dealing monopoly, attempted monopolization, and conspiracy to monopolize. The Court will analyze each of these allegations in turn.

### A.

Norte Car alleges that FirstBank required it to accept financing and banking services only from FirstBank. This situation is a classical tying situation.[11] An antitrust violator ties the sale of one product, here financing, to the sale of a different product, here additional financing and banking services.[12]

In a tying situation, two separate products must be for sale. In Norte Car's first tying scenario, Norte Car alleges that FirstBank required it to obtain additional financing from FirstBank. The complaint does not state whether this financing was different enough from the floor plan financing to constitute a different product from the floor plan financing.

In the second tying scenario described by Norte Car, the antitrust violator requires that the buyer not buy a particular product from any other supplier. Here, Norte Car alleges that FirstBank required Norte Car not to purchase financing or other banking services in exchange for the floor plan financing. If such requirements were in place, Norte Car's arrangement with FirstBank may constitute an exclusive dealing arrangement for Norte Car with regard to banking and financing services provided by FirstBank to Norte Car.

### B.

Norte Car alleges that FirstBank required Norte Car to refer all of its customers to FirstBank for their banking needs. This

may constitute a form of reciprocal dealing. FirstBank allegedly conditioned the grant of floorplan financing on Norte Car's referral of Norte Car's customers to FirstBank. This referral may constitute a form of sale. The complaint contains no allegation that Norte Car received any benefit for this referral; that is, FirstBank paid no commission for the referral. While at this stage of the pleading process, Norte Car may have sustained a claim for reciprocal dealing, Norte Car will have to prove that making a referral for no commission constitutes a necessary one half of a reciprocal dealing equation. *See, e.g., Bass v. Boston Five Cent Savings Bank,* 478 F.Supp. 741, 748 (D.Mass.1979) (requiring a borrower to deposit interest in an interest-free account is not a "product" needed to allege a reciprocal dealing claim).

### C.

Norte Car alleges that FirstBank required it to refer all of its customers in need of insurance to designated third parties with whom FirstBank allegedly had some contacts.[13] At best, Norte Car has alleged a triangulated reciprocal dealing; that is, in order for FirstBank to be willing to sell Norte Car financing, Norte Car had to refer (possibly a kind of sale) its referrals to FirstBank's designated agents.

Neither of the scenario described in Section B nor the one in this Section C involves tying. FirstBank's sale of one of its own products was not conditioned on Norte Car's purchase of another product from FirstBank. The referred customers were not required to buy banking services or insurance from FirstBank or the third parties to whom they were referred. *Brokerage Concepts,* 140

---

**11.** FirstBank argues that the necessary "concerted action" is not alleged such that FirstBank has violated Section One of the Sherman Act. The Supreme Court, however, has affirmed a Ninth Circuit case which found that a tying arrangement forced upon a customer satisfies the concerted action requirement of Section One. *Image Tech. Serv., Inc. v. Eastman Kodak Co.,* 903 F.2d 612, 619 (9th Cir.1990), *aff'd,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

**12.** It should be noted that as to this first kind of tying claim, Plaintiffs failed to allege in its com-

plaint that they actually ever bought the tied products. Circuit courts are divided as to whether a person may be held liable for a tying violation if the buyer never actually buys the tied product. *Antitrust Law,* § 22.02[3].

**13.** The party who claims direct damages here is a third party insurance broker with ties to Norte Car. She claims that she should have had the business that FirstBank required Norte Car to direct to its designees. There are no motions pending with regard to this Plaintiff.

F.3d at 511 (healthcare maintenance organization's (HMO) requirement that self-insured pharmacy chain use HMO subsidiary as third-party administrator of insurance claims was not tying arrangement, but fell somewhere between tying and reciprocal dealing).

### D.

Finally, Norte Car alleges that the right-of-first-refusal provision included in its retail paper sales arrangement with FirstBank constitutes an illegal tie. Plaintiff is incorrect. With a right of first refusal, one party is required to allow a second party the first opportunity, over other purchasers, to buy a product offered by the first party. In a tying arrangement, one party must buy two products from another party. In the present action, the agreement between FirstBank and Norte Car required Norte Car to offer FirstBank the opportunity to buy retail paper generated by Norte Car's car sales; Norte Car did not have to buy a second product from FirstBank.

■ A contractual right of first refusal can constitute an illegal exclusive dealing arrangement. Illegal exclusive dealing results when a contract is conditioned upon the agreement of one party not to deal with another party. In this case, under Plaintiff's theory, the facts alleged by Norte Car suggest that because FirstBank could always exercise the right of first refusal, Norte Car effectively could not offer the retail paper generated by its car sales to any other purchaser. Norte Car claims to have been damaged by this contractual provision because the commissions paid by FirstBank to Norte Car when FirstBank purchased the loans were allegedly lower than those paid by other banks for the same kind of loan. (Complaint, ¶ 37.)

If Norte Car was forced to accept this scheme at FirstBank's insistence, the arrangement may constitute an illegal exclusive dealing arrangement. In order to sustain this claim, Plaintiff will, however, have to explain how it was forced into this arrangement. The Floor Plan Agreement begins, "*In order to induce you (the 'Bank')* to finance the purchase by the undersigned . . . of new . . . vehicles and/or used motor vehicles . . . as you may, from time to time and at your sole discretion, be willing to finance. . . ." (Docket 30, Ex. 3A (emphasis added).) This document concludes with the provision of a right of first refusal. A second document, which Plaintiff alleges is related to the floor plan agreement, begins, "From time to time, we expect to offer you RETAIL INSTALLMENT CONTRACTS, for purchase, each of which will evidence a deferred-payment obligation of a Buyer for the purchase of a motor vehicle (hereinafter referred to as the "Buyer(s)" and as "Vehicle(s)". *In order to induce you* to acquire the same, at your option from time to time, we hereby covenant. . ." (Docket No. 30, Ex. 3B (emphasis added)). In these documents, Norte Car, not FirstBank, offered the right-of-first-refusal provision.

Neither the complaint nor the parties' memoranda explain what happened if and when FirstBank failed to exercise its right of first refusal. The complaint does not allege that anything prevented Norte Car from establishing a working relationship with other banks who would compete with FirstBank's terms, if FirstBank declined the sales offer. The complaint does not allege that FirstBank exercised its rights of first refusal in a manner that sought to illegally restrict competition. In fact, the Floor Plan Agreement explicitly provides that "Dealer will give the Bank at least ten (10) days prior written notice before entering into any floor plan or inventory financing arrangement with any person other than the Bank." (Ex. 3B.) Under this provision, even if FirstBank always exercised its right of first refusal as to the retail paper generated by Norte Car's car sales, Norte Car was free, with ten days notice, to find floor plan financing elsewhere. Presumably, Norte Car could search for better financing terms, possibly without a right of first refusal, from another financing organization. It seems highly unlikely that this arrangement could constitute an exclusive dealing arrangement, unless additional coercion was exerted by FirstBank on Norte Car.

### E.

The facts alleged by Norte Car with regard to each of the four alleged violations

may set forth many of the rudimentary allegations needed to plead an antitrust case against FirstBank. However, Norte Car's pleadings are incomplete and legally insufficient without allegations and specific facts relating to the effect of the alleged antitrust violations on competition. *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (citation omitted).

With regard to the alleged violations which may constitute per se violations of the antitrust laws under the Sherman Act (e.g., tying, reciprocal dealing,[14] exclusive dealing), Norte Car has failed to allege facts that there was a lessening of competition because of FirstBank's actions, 15 U.S.C. § 1. Norte Car's simple statements that competition was reduced, or that one of the insurance salespersons with whom Norte Car used to work with had lost some business, cannot carry Norte Car's pleading burden. Norte Car has failed to allege any market power held by FirstBank.

■ With regard to alleged violations under the rule of reason, Norte Car has not defined, described or even alluded to a market for products or services within which *FirstBank* operates. "In order to prove a contract or combination in restraint of trade in violation of Section One of the Sherman Act, the plaintiff must also prove that the defendant had market power in the relevant market, and the specific intent to restrain competition." *CVD, Inc.,* 769 F.2d at 851. Before proving market power, Norte Cars must plead market power. For the same reason, Norte Car's suggestions that First-Bank has engaged in monopolistic, or attempted monopolistic, actions are fatally flawed. *Coastal Fuels,* 79 F.3d at 198. Norte Car has failed to allege that FirstBank has, or has attempted to obtain, monopolistic power in any market. The Court therefore dismisses without prejudice all of Norte Car's Sherman Act claims against FirstBank. Norte Car may replead these causes of action within thirty days of the date of notice of this order.

## VII. The Bank Holding Company Act

Norte Car's claims under the Bank Holding Company Act, 12 U.S.C.A. §§ 1971–1976 (1998), require a different analysis.

■ FirstBank requests summary judgment dismissing Norte Car's Bank Holding Company Act claims, which are based on 12 U.S.C. § 1972. Section 1972 of the Bank Holding Company Act states in relevant part:

(1) A bank shall not in any manner extend credit ... on the condition or requirement—.

(A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit or trust service;

(B) that the customer shall obtain some additional credit, property or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company;

(C) that the customer provide some additional credit, property or service to such bank other than those related to and usually provided in connection with a loan, discount deposit or trust service;

(D) that the customer provide some additional credit, property or service to a bank holding company of such bank, or to any other subsidiary of such bank holding company; or

(E) that the customer shall not obtain some other credit, property or service from a competitor of such bank, a bank holding company of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit.

12 U.S.C. § 1972(1). The purpose of this Act is to prohibit anticompetitive practices which require bank customers to accept or provide some other product or refrain from dealing with other parties in order to obtain the bank product or services they desire. *B.C. Recreational Indus. v. First Nat'l Bank of Boston,*

---

14. Some of these arrangements may also be subject to a rule of reason analysis.

639 F.2d 828, 831 (1st Cir.1981) (citing S.Rep. No. 1084, 91st Cong., 2d Sess. 17 (1970)).

The legislative history further states: "The committee does not intend, however, that the provision interfere with the conduct of the appropriate traditional banking." *Id.* "So also, it has been held that the tying prohibitions do not interfere with the conduct of appropriate traditional banking practices." *Id.* (citations omitted). FirstBank defends its actions, including the right-of-first-refusal clause, by asserting that such a clause is a standard banking practice. (Docket No. 22.) Norte Car refuses to engage this argument. In its opposition to FirstBank's motion for summary judgment, Norte Car argues,

> The Bank acknowledges such clear cut breach of the statute then attempts to argue that the action is not illegal because **"everybody does it"** . . . . This is an attempt to have the forbidden conduct fit within an alleged limited exception, that does not exist. No such exception exists, none was drafted into the statute, none is justified under the principles that the statute promotes. It is only a matter of nomenclature.

(Docket No. 30, at 21 (emphasis in original).) Such obstinacy works to Norte Car's detriment. Some courts hold that an anti-tying Bank Holding Company Act plaintiff must plead and prove that the banking practice at issue was unusual in the banking industry. *See Rae v. Union Bank,* 725 F.2d 478, 480 (9th Cir.1984) (cited with approval in *Figueroa v. Alegria,* 896 F.2d 645, 648–49 n. 3 (1st Cir.1990)). Other courts have found that a plaintiff can escape liability if its activities fall within one of three exceptions to the anti-tying provisions. *See Executive Leasing Corp. v. Banco Popular de Puerto Rico,* 1994 WL 448985, at * 5 (D.P.R.1994) (Arenas, M.J.). These three exemptions to the anti-tying prohibitions under which there is no liability are: 1) that the additional property the customer must obtain from the bank is related to the loan; 2) that the additional property the customer must provide to the bank is related to and usually provided in connection with a loan; or 3) that the condition of not obtaining credit from another bank is a condition that such bank shall

reasonably impose to assure the soundness of the credit. *See* 12 U.S.C. § 1972(1); *Flags I, Inc. v. Boston Five Cents Sav. Bank,* 831 F.Supp. 928, 934 (D.N.H.1993). Norte Car does not allege that FirstBank's practices were not a standard banking practice, or even attempt to refute FirstBank's claims that its practices were standard in the industry.

 Norte Car's reading of the anti-tying statute is confused. As discussed above in Section III, Norte Car alleges that First-Bank carried out four antitrust activities against Norte Car. First, Norte Car alleges that Norte Car had to send all of its banking and financial business to FirstBank. The referral of the banking business, which as far as the documents in the case show involved only a checking account, is permissible under 12 U.S.C. § 1972(1)(A). This section allows a bank to condition a loan on a "deposit". As to the additional financing, Norte Car never alleges that FirstBank enforced any such provision, or that Norte Car obtained such additional credit, *id.,* although FirstBank's motion for summary judgment suggests that the allegation is properly made in the complaint. (Docket No. 22, at 13.) However, the statute allows a bank to condition the extension of credit on a loan, so additional financing received by Norte Car from First-Bank would not necessarily contravene the statute. 12 U.S.C. § 1972(1)(A). Nor does the floor plan agreement itself require that Norte Car gather additional financing from FirstBank, and the Court is obliged to examine only the loan agreement when considering an unambiguous agreement. *Executive Leasing Corp.,* 1994 WL 448985, at *7 (examining loan agreements under Puerto Rico Rules of Evidence in Bank Holding Company Act case).

 Second, Norte Car allegedly had to refer its customers with banking business to FirstBank. Here, the allegedly mandatory referral is not an illegal tie as alleged by Norte Car under 12 U.S.C. § 1972(1)(A). This section of the statute requires that the customer receive something additional from the bank, but Norte Car has not alleged that Norte Car received anything additional from FirstBank. It may, however, violate Part C

of the statute which forbids a provision that requires a customer to provide the bank with an additional service. 12 U.S.C. § 1972(1)(C). A referral might constitute a service under the statute. However, the financing agreement at issue here does not contain a provision requiring Norte Car to make such referrals, and the Court is limited in the evidence that it may examine. *Executive Leasing Corp.*, 1994 WL 448985, at *7.

■ Third, Norte Car allegedly had to refer its customers to FirstBank's designated insurance agents. As Baldrich Associates and Monumental Insurance are not the bank, a bank holding company, or a subsidiary of a bank holding company, referrals to these two companies do not fall within the specific prohibitions of the Bank Holding Company Act anti-tying provisions. 12 U.S.C. § 1972.

■ Fourth, Norte Car alleges that the right-of-first-refusal provision of the floor financing agreement is an illegal tie. Norte Car is incorrect when it argues that this provision violates 12 U.S.C. § 1972(1)(A), because the alleged tie did not require Norte Car to obtain anything additional from First-Bank. However, the provision may violate 12 U.S.C. § 1972(1)(C) *if* offering FirstBank the opportunity to purchase retail paper constitutes a "service" under the statute, and if such service is one not "usually provided in connection with a loan. . . ." *Id.* FirstBank has put forth some evidence that this practice is standard in the industry; Norte Car has failed to put forth any evidence as to industry practices. With the introduction of additional evidence in the future, the Court will be in a position to evaluate the standard banking practices in the banking industry.

All of Norte Car's antitrust allegations under the Bank Holding Company Act (BHCA), except for its BHCA claim regarding the right-of-first-refusal clause, fail to state a claim because the allegedly illegal actions pleaded in the complaint do not violate the statute's prohibitions. The Court dismisses

without prejudice all of Norte Car's Bank Holding Company Act claims, except for the claim regarding the right of first refusal. The Court grants Norte Car thirty days from the date of notice of this order to replead these causes of action.

The Court cautions Plaintiff that it is not merely a question of repleading. Plaintiff must evaluate the facts of its case. Plaintiff must determine if there are sufficient facts that comply with the legal antitrust standards set forth in this opinion.[15]

## VIII. Supplemental Jurisdiction

As there is only one federal law claim remaining, the Court declines to exercise supplemental jurisdiction at this early stage of the case. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Moor v. County of Alameda*, 411 U.S. 693, 716, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973); *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995). The state law claims also represent novel issues under Puerto Rico law. 28 U.S.C. § 1367(c)(1). The state law claims would be likely to overwhelm the federal claims. 28 U.S.C. § 1367(c)(2).

## IX. Conclusion

The Court dismisses without prejudice each of Norte Car's federal claims, except for its Bank Holding Company Act claim related to the floor plan financing agreement's right-of-first-refusal clause, for failure to state a claim upon which relief may be granted. Plaintiff may replead its complaint within thirty days of the date of notice of this order. Should Plaintiff replead the complaint, counsel is urged to examine closely the elements needed to sustain each antitrust claim alleged. The Court declines to exercise supplemental jurisdiction over Norte Car's state law claims at this time. Because of Plaintiff's failure in pleading, Plaintiff's motion for

---

15. In making such an evaluation, Plaintiff's counsel is reminded to consider Rule 11 of the Federal Rules of Civil Procedure. By presenting a signed complaint to the Court, the attorney is certifying "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" . . . "(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;. . ." Fed.R.Civ.P. 11(b).

partial summary judgment is denied. (Docket No. 30.)

IT IS SO ORDERED.