IVISION INTERNATIONAL OF PUERTO RICO, INC., et al., Plaintiffs,

v.

DAVILA–GARCIA, et al., Defendants.

No. CIV. 04–2124(JAF).

United States District Court, D. Puerto Rico.

April 11, 2005.

Jesus E. Cuza–Abdala, Jeffrey A. Hirsch, and John L. McManus, Fort Lauderdale, FL, for Plaintiffs.

Edgar R. Vega–Pabon, Vega Pabon, Rodriguez Encarnacion & Lopez Covas, San Juan, PR, for Defendants.

## OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiffs, Ivision International of Puerto Rico, Inc., a Puerto Rico corporation ("Plaintiff Ivision Puerto Rico"), and Ivision International of Puerto Rico, a Florida corporation ("Plaintiff Ivision Florida"), bring this action against Defendants, Edgar Dávila García, O.D., his spouse, Jane Doe Dávila, and their conjugal partnership; José N. Lugo Montalvo, O.D., d/b/a Optometry World Carolina, his spouse, Jane Doe Lugo, and their conjugal partnership; Jorge Bonilla Dávila, O.D., d/b/a/ Optometry World, his spouse, Jane Doe Bonilla, and their conjugal partnership; Carlos Rivera Alonso, O.D., his spouse, Jane Doe Rivera, and their conjugal partnership; Angel Whatts, O.D., his spouse, Jane Doe Whatts, and their conjugal partnership; and John Doe Optometrists; alleging violations of sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26 (1997 & Supp.2004); section 1 of the Sherman Act, 15 U.S.C. § 1 (1997 & Supp.2004); and the antitrust laws of the Commonwealth of Puerto Rico, 10 L.P.R.A. § 258 (1997 & Supp.2001). *Docket Document No. 1.*

Defendants move to dismiss Plaintiffs' claims for failure to state claims upon which relief can be granted. *Docket Document No. 20;* FED. R. CIV. P. 12(b)(6). Plaintiffs oppose the motion. *Docket Document No. 26.*

### I.

*Factual and Procedural Analysis*

Unless otherwise noted, we derive the following factual summary from Plaintiffs'

complaint. *Docket Document No. 1.* As we must, we "assume all plaintiffs' allegations are true and make all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins., Co.,* 267 F.3d 30, 36 (1st Cir.2001).

Plaintiff Ivision Puerto Rico has its principal place of business in Puerto Rico. Plaintiff Ivision Florida has its principal place of business in Florida.

Defendant Edgar Dávila García, O.D. ("Dr.Dávila") is a Puerto Rico citizen and is licensed to practice optometry in Puerto Rico. José N. Lugo Montalvo, O.D., d/b/a Optometry World Carolina, ("Dr.Lugo") is a citizen of Puerto Rico and is licensed to practice optometry in Puerto Rico. Jorge Bonilla Dávila, O.D., d/b/a/ Optometry World, ("Dr.Bonilla") is a Puerto Rico citizen and is licensed to practice optometry in Puerto Rico. Carlos Rivera Alonso, O.D. ("Dr.Rivera") is a Puerto Rico citizen and is licensed to practice optometry in Puerto Rico. Angel Whatts, O.D. ("Dr.Whatts") is a Puerto Rico citizen and is licensed to practice optometry in Puerto Rico.

Plaintiffs Ivision Puerto Rico and Ivision Florida are sister corporations and part of the Ivision International group of companies. Ivision Florida contracts with insurers and health maintenance organizations ("group plans") in Puerto Rico to provide vision care services and products ("Ivision vision benefits") to eligible members and their dependants ("members"). The members, in turn, contract with the group plans for their benefits. Ivision Puerto Rico, in turn, contracts with licensed optometrists ("providers") in Puerto Rico to provide the Ivision vision benefits to members. All optometrists licensed in Puerto Rico are members of the Colegio de Optómetras de Puerto Rico, Inc. ("Colegio"), a nonprofit incorporated professional association of optometrists that does business under the laws of the Commonwealth of Puerto Rico.

Absent agreements among competing optometrists on the price or terms upon which they will provide services to third-party payors and patients, competing optometrists decide individually whether and under what terms to enter into contracts with third-party payors and patients.

Under the typical Ivision Puerto Rico contract with providers ("provider contract"), providers agree to accept and treat members on an equal basis with their non-member patients. Providers also agree to accept as compensation for all approved and fully-covered services and products, a fee schedule pre-negotiated with Ivision Puerto Rico. For those services and/or products not covered by the member's benefit contract with the group plan, the provider allows members a pre-negotiated discount.

Ivision does not dictate what the member may purchase and the member may purchase from the provider additional services and/or more expensive products. Similarly, a provider is not required to purchase any product or service from Ivision, but, upon a member's request, is required to dispense the Ivision vision benefits. By entering into a provider contract, the provider benefits from the increased member patronage and retains the right to sell to such members products and services beyond those covered by the Ivision vision benefits. Ivision negotiated each contract individually with each provider and no provider is a party to the contract or relationship between Ivision Puerto Rico and any other provider.

Plaintiffs allege that Dr. Dávila, Dr. Lugo, Dr. Bonilla, Dr. Rivera, and Dr. Whatts (collectively "Defendants"), at least some of whom have acted as representatives of the Colegio, have intentionally and with malice, acted to restrain competition by, inter alia, encouraging, facilitating, entering into, and implementing agreements

among Colegio members to raise the reimbursement rates paid by Ivision Puerto Rico and to conduct a boycott of Ivision Puerto Rico and Ivision Florida in order to obtain higher reimbursements or destroy Ivision.

Plaintiffs allege that Defendants have used their market power and Colegio's influence to incite providers to immediately terminate their existing provider contracts, suspend their services to members under existing contracts terms, diminish the level of services to members under existing contract terms, and induce prospective providers to refrain from entering into provider relationships with Ivision Puerto Rico. Defendants allegedly disrupted Ivision meetings with providers, contacted providers and optometrists to urge them to join in the boycott and attend organization meetings to facilitate the boycott, disseminated misleading pricing information regarding the Ivision vision benefits to providers, incited numerous providers to suspend their agreements with Ivision Puerto Rico, interfered with group plans and Ivision Florida's contractual relationship with the group plans, contacted the group plans to warn them of mass provider resignations unless Ivision raised its reimbursement rates, and held an October 4, 2004, meeting with the group plans.

The Colegio and Defendants' efforts to persuade providers to terminate, suspend or diminish their relationship with Ivision Puerto Rico have, to a large degree, been successful. Other providers have allegedly advised Ivision that they will later join the boycott if Ivision does not meet Defendants' demands. Due to the boycott, a significant number of Ivision providers have resigned or are no longer seeing members. Further, as an alleged result of the economic pressure created by Defendants' price fixing and concerted refusal to deal, Ivision has been forced to increase its reimbursement rates, which have increased consumers' health care costs.

Plaintiffs aver that Defendants' actions violate section 1 of the Sherman Act and corresponding Puerto Rico law. Plaintiffs request, inter alia, injunctive relief, treble damages, attorney's fees, and costs under 15 U.S.C. §§ 15 & 26.

Defendants move to dismiss Plaintiffs' complaint, on the grounds that Plaintiffs have failed to state a claim upon which relief can be grated, namely that: (1) Plaintiffs' complaint fails to claim an impact on interstate commerce; (2) Plaintiffs have not properly alleged antitrust standing or antitrust injury; and (3) in that we should fail to find a federal cause of action, Plaintiffs' Puerto Rico state claims should be dismissed. *Docket Document No. 20.* Plaintiffs oppose Defendants' motions. *Docket Document No. 26.*

## II.

### *Legal Standard*

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action against him based solely on the pleadings for the plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In assessing a motion to dismiss, "we accept as true the factual averments of the complaint and draw all reasonable inferences therefrom in the plaintiffs' favor." *Educadores Puertorriqueños en Acción v. Hernández,* 367 F.3d 61, 62 (1st Cir.2004) (citing *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998)); *see also Wash. Legal Found. v. Mass. Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993). We then determine whether the plaintiff has stated a claim under which relief can be granted.

We note that a plaintiff must only satisfy the simple pleading requirements of Federal Rule of Civil Procedure 8(a) in

order to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Morales–Villalobos v. García–Llorens*, 316 F.3d 51, 52–53 (1st Cir.2003); *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55–56 (1st Cir.1999). A plaintiff need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R.CIV.P. 8(a)(2), and need only give the respondent fair notice of the nature of the claim and petitioner's basis for it. *Swierkiewicz*, 534 U.S. at 512–515, 122 S.Ct. 992. "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* at 514 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

## III.

### *Analysis*

#### A. *Impact on Interstate Commerce*

Defendants argue that Plaintiffs have failed to allege any impact on interstate commerce as required under section 1 of the Sherman Act. *Docket Document No. 20.*

■ Under section 1 of the Sherman Act, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States ... is ... illegal."[1] 15 U.S.C. § 1; *Arroyo–Melecio v. Puerto Rican Am. Ins. Co.*, 398 F.3d 56, 66 (1st Cir.2005). The trade of commerce affected by the purported wrongdoings "must involve interstate claims that either affect the flow of commerce or affect commerce." *Norte Car Corp. v. FirstBank Corp.*, 25 F.Supp.2d 9, 16 (D.P.R.1998). "To estab-

lish federal jurisdiction in this case, there remains only the requirement that [plaintiffs'] activities which allegedly have been infected by [an antitrust violation] be shown 'as a matter of practical economics' to have a not insubstantial effect on the interstate commerce involved." *McLain v. Real Estate Bd. of New Orleans*, 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980) (citations omitted); *Norte Car Corp.*, 25 F.Supp.2d at 16. Although this requirement is a jurisdictional one, the standard which Plaintiffs must meet is not overly burdensome. *See Tropical Air Flying Servs., Inc. v. Carmen Feliciano de Melecio*, 158 F.Supp.2d 177, 184 (D.P.R. 2001); *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 873 (3d Cir.1995) ("Although the 'interstate commerce requirement' of the Sherman Act is often referred to as 'jurisdictional,' the Supreme Court has held that there is no practical distinction between the 'jurisdictional' interstate commerce inquiry and consideration of whether a complaint pleads an effect on interstate commerce sufficient to state a claim for relief under the Sherman Act.... [A]n analysis of challenges to antitrust claims based on the interstate commerce element under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) leads to the same result.") (citing *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 742 & n. 1, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976)). Further, the Supreme Court has held that Sherman Act's reach is as broad as Congress' power under the Commerce Clause. *McLain*, 444 U.S. at 241–42, 100 S.Ct. 502; *San Juan Cement, Inc. v. Puerto Rican Cement Co.*, 922 F.Supp. 716, 720 (D.P.R. 1996). Thus, all a plaintiff must do to survive a defendant's motion to dismiss based on a lack of effect on interstate commerce is "allege a general connection

---

1. Puerto Rico is treated as a state for purposes of the Sherman Act. *See, e.g., Cordova &*     *Simonpietri Ins. Agency, Inc. v. Chase Manhattan Bank, N.A.*, 649 F.2d 36, 37 (1st Cir.1981).

with interstate commerce, and an effect thereon resulting from defendant's allegedly illegal conduct." *Id.* at 723; *Tropical Air Flying Servs.*, 158 F.Supp.2d at 184.

■ Plaintiffs allege that the conduct which forms the basis of their dispute substantially impacts upon interstate commerce insofar as Plaintiffs are Florida and Puerto Rico corporations that have officers and employees in both Florida and Puerto Rico. *Docket Document No. 1.* Further, in their complaint, Plaintiffs aver that as a direct result of the boycott and Defendants' interference with the Puerto Rico-based group plans, one of the group plans has cancelled its contract with Ivision Florida. *Id.* Such allegations-that the boycott of Ivision Puerto Rico directly interferes with the business of Ivision Florida-are sufficient to show a general connection with interstate commerce, as required to meet the interstate commerce jurisdictional requirement. *San Juan Cement,* 922 F.Supp. at 723; *Tropical Air Flying Servs.,* 158 F.Supp.2d at 184. ("[A] substantial portion of the services provided by [defendant] to patients are paid through health insurance plans which invariably involve a continuous and uninterrupted flow of services, products, contracts and claims in interstate commerce."). Defendants' motion to dismiss Plaintiffs' complaint on these grounds is denied accordingly.

## B. *Antitrust Injury and Antitrust Standing*

Defendants argue that Plaintiffs have failed to allege either antitrust standing or antitrust injury and their antitrust claim should be dismissed. *Docket Document No. 20.*

■ In determining whether a plaintiff has antitrust standing, a court must consider: " '(1) the causal connection between the alleged antitrust violation and harm to the plaintiff; (2) an improper motive; (3) the nature of the plaintiff's alleged injury

and whether the injury was of a type that Congress sought to redress with the antitrust laws ('antitrust injury'); (4) the directness with which the alleged market restraint caused the asserted injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex apportionment of damages.' " *Arroyo–Melecio,* 398 F.3d at 72 (citing *Sullivan v. Tagliabue,* 25 F.3d 43, 46 (1st Cir.1994)). A court must "consider the balance of factors in each case in an effort to guard against 'engraft[ing] artificial limitations on the § 4 remedy." *Sullivan,* 25 F.3d at 46 (quoting *Blue Shield of Va. v. McCready,* 457 U.S. 465, 472, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982)).

■ As alleged, Plaintiffs are the direct target of the boycott instigated to financially destroy them. Thus, there is a strong causal connection between the supposed antitrust violation and Plaintiffs' harm. *Arroyo–Melecio,* 398 F.3d at 72 (stating that the typical plaintiffs in group boycott charges are the targets of the boycott). In their complaint, Plaintiffs allege that Defendants acted intentionally, with malice, and for an anti-competitive purpose, all of which suffice to demonstrate an improper motive for Defendants' actions. Further, Plaintiffs claim to be directly injured by Defendants' boycott, which is a type of injury that "the antitrust laws were designed to prevent." *Sullivan v. Tagliabue,* 25 F.3d 43, 47 (1st Cir.1994); *Morales–Villalobos v. Garcia–Llorens,* 316 F.3d 51, 55 (1st Cir.2003) ("[There is] no obvious reason why-if the exclusive dealing or group boycott charges amount to a violation-the injury to her would not be of the kind that antitrust laws are intended to address."); *Arroyo–Melecio,* 398 F.3d at 73 ("At the Rule 12(b)(6) stage, we cannot conclude that the alleged antitrust activities could not be proven to be a but-for cause of the harm the consumers allegedly

suffered..... Such causation issues are often decided at summary judgment, not on the pleadings, precisely because they depend on some factual development." (internal citations and parenthetical omitted)). Finally, we do not find, at this stage, that Plaintiffs' requested damages would be highly speculative or duplicative. *Ashmore v. Northeast Petroleum Div. of Cargill, Inc.*, 843 F.Supp. 759, 767 (D.Me. 1994) (explaining that because the plaintiffs were directly affected by defendants' actions, there was no danger of duplicative recoveries or complex apportionment); *Donovan v. Digital Equip. Corp.*, 883 F.Supp. 775, 784 (D.N.H.1994) (stating that "in the absence of an action by a party claiming a more direct antitrust injury ... there is little risk of duplicative recovery."). Being that "damage issues in antitrust cases are rarely 'susceptible of the kind of concrete, detailed proof of injury which is available in other contexts,'" *Lago & Sons Dairy, Inc. v. H.P. Hood, Inc.*, 892 F.Supp. 325, 344 (D.N.H.1995) (quoting *J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*, 451 U.S. 557, 565, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981)), we see nothing, at this early stage in the parties' litigation, which would make Plaintiffs' requested damages unascertainable, highly complex, or would create duplicative recovery. To the extent that Defendants argue that duplicative damages will potentially be awarded due to Plaintiffs' similar state law tortious interference claims, as Defendants concede, if necessary, the jury can be instructed to avoid duplicative damages between state and federal claims.

Because we find that the weight of the relevant factors fall in Plaintiffs' favor, we confer upon them antitrust standing and deny Defendants' motion to dismiss on these grounds.

## C. *Puerto Rico Law Claims*

Finally, Defendants argue that because Plaintiffs' state claims are before us based solely upon supplemental jurisdiction, Plaintiffs' Puerto Rico claims should be dismissed along with their federal claims. *Docket Document No. 20.* In that we have declined to dismiss Plaintiffs' federal claims, Defendants' argument is inapposite.

## IV.

### *Conclusion*

In accordance with the foregoing, we DENY Defendants' motion to dismiss. *Docket Document No. 20.*

IT IS SO ORDERED.