**W. David LEAK, et al., Plaintiffs,**

v.

**GRANT MEDICAL CENTER, et al., Defendants.**

**No. C–2–94–117.**

United States District Court, S.D. Ohio, Eastern Division.

July 18, 1995.

758

Donald Joseph McTigue, McTigue & Brooks, Columbus, OH, for plaintiffs.

John Hamrick Burtch, Baker & Hostetler, Columbus, OH, for defendants, Grant Medical Center, Bhagwan Satiani, M.D. and Paul Addessi, M.D.

Douglas Eric Graff, Graff & Associates, Columbus, OH, for defendants Grant Anesthesia Associates Inc., James Higly, D.O., Sambit K. Barua, M.D., M. Farid Edwards, M.D., Michael McKay, M.D., Chang Kim, M.D., Lee K. Roh, M.D., Karen Logan, M.D., Jon T. Preston, M.D., Bradley Getz, M.D.

### OPINION AND ORDER

GEORGE C. SMITH, District Judge.

Plaintiffs bring this action under federal antitrust laws [1] and state law [2] asserting, *inter alia*, that defendants improperly denied plaintiff David Leak, M.D., medical staff privileges at Grant Medical Center. This matter is before the Court on defendants' motions for summary judgment (Docs. 19 and 20). Defendants argue that they are entitled to summary judgment in their favor because plaintiffs have not suffered antitrust injury and therefore lack standing to bring federal antitrust claims. For the following reasons the Court grants defendants' summary judgment motions.

### I.

Plaintiff Dr. Leak is a licensed physician who specializes in pain medicine. Plaintiff Pain Control Consultants, Inc. ("PCC") is an Ohio corporation in the business of operating a comprehensive pain treatment center. Dr. Leak is the Director and sole shareholder of PCC.

Defendant Grant Medical Center ("Grant") is an Ohio corporation in the business of operating a hospital in Columbus, Ohio. Defendant Grant Anesthesia Associates, Inc. ("GAA") is an Ohio corporation engaged in the business of providing anesthesia services to Grant under an exclusive contract.

Defendants Bhagwan Satiani, M.D., M. Farid Edwards, M.D., James Highly, O.D., Sambit K. Barua, M.D., Bradley Getz, M.D., Michael McKay, M.D., Chang Kim, M.D., Lee K. Roh, M.D., Karen Logan, M.D., and Jon T. Preston, M.D. are all members of the Grant medical staff and GAA. Defendant Paul Addessi, D.O. was a member of the Grant medical staff.

Since 1988 Dr. Leak periodically has sought and obtained medical staff privileges at Grant on a case-by-case basis. On July 1, 1991, Dr. Leak applied for medical staff privileges at Grant. Dr. Leak specified Anesthesia and Surgery as the departments for which he sought privileges because the application had no category for pain medicine.

In April 1992 the Grant Anesthesia Department recommended granting Dr. Leak provisional privileges on the condition that Dr. Leak would serve as an on-call anesthesiologist to provide anesthesia services to patients. The Grant Anesthesia Department Bylaws require anesthesiologists to provide on-call services as a condition to obtaining

---

**1.** Plaintiffs assert claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.

**2.** Plaintiffs assert state law claims of breach of contract, tortious interference with contractual relations, racial discrimination, and violation of Ohio's Valentine Act.

privileges within the department. Dr. Leak did not submit to Grant an on-call schedule, although he avers that he made several attempts to contact the Chairperson of the Anesthesia Department Credentials Committee to discuss the schedule.

On February 26, 1993, Grant entered into an exclusive contract with GAA for the provision of anesthesia services to the hospital's patients. The contract provided that comprehensive pain management[3] was within the range of anesthesia services GAA would offer.

Dr. Leak sent a letter to the president of Grant on March 18, 1993, discussing Dr. Leak's qualifications and asking to meet with the president to discuss his application for privileges. On March 25, 1995, defendant Dr. Edwards sent a letter to Dr. Leak informing him that Grant was unable to process his application for privileges because of the exclusive contract with GAA.

In August 1993 Grant advised Dr. Leak that GAA was seeking a Director of Pain Management. It is unclear whether Dr. Leak followed up on this information.

It is undisputed that Dr. Leak has medical staff privileges at two other Columbus-area hospitals: Park Medical Center and Columbus Community Hospital.

## II.

■ The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the

dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476 (6th Cir.1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

■ In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. at 2514). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356). Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is,

---

**3.** Dr. Leak draws a sharp distinction between pain medicine and pain management. He avers that pain medicine, in contrast to pain manage-

ment, seeks long term rather than temporary solutions to pain. Dr. Leak affidavit para. 25.

the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

## III.

Plaintiffs assert eight counts of federal antitrust violation. Counts one through five set forth alleged violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.[4] Specifically, Count One asserts that defendants engaged in a group boycott by denying Dr. Leak staff privileges; Count Two maintains that Grant is an essential facility and failure to allow Dr. Leak to share the facility therefore constitutes a *per se* violation of § 1; Count Three maintains that the exclusive contract with GAA is an unlawful tying arrangement; Count Four alleges that defendants engaged in unfair acts with the intent of eliminating competition from Dr. Leak; and Count Five asserts that defendants' actions unreasonably restrained trade under the rule of reason theory.

Counts Six through Eight allege violations of Section 2 of the Sherman Act, 15 U.S.C. § 2.[5] These Counts claim that defendants have monopolized, attempted to monopolize, and conspired to monopolize, the market for in-hospital diagnosis and treatment of acute and chronic pain within the relevant geographic market.

Defendants argue that they are entitled to summary judgment in their favor on all of plaintiffs' federal claims because plaintiffs have not suffered antitrust injury and therefore lack standing.

Plaintiffs also assert state law claims. Defendants contend that because plaintiffs' federal claims must be dismissed, the Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The Court will proceed to address whether plaintiff has suffered antitrust injury.

## IV.

There is no lack of case law discussing antitrust claims by health care professionals against those who have denied them medical staff privileges at hospitals. Numerous legal scholars have compiled and analyzed the legion of decisions on this subject. *See, e.g., ABA Antitrust Section, Annual Review of 1993 Antitrust Law Developments* at 287–95 (1994) (concise overview); Michael G. Macdonald, Kathryn C. Meyer & Beth Essig, *Health Care Law: A Practical Guide* § 9.03[1] (1994) (concise overview); William S. Brewbaker, III, *Antitrust Conspiracy Doctrine and the Hospital Enterprise*, 74 B.U.L.Rev. 67 (1994) (advocating antitrust scrutiny of medical review board decisions and adoption of mechanisms to ensure that governing bodies' decisions are independent); Josephine M. Hammack, *The Antitrust Laws and the Medical Peer Review Process*, 9 J.Contemp.Health L. & Pol'y 419 (1993) (discussing recent cases and ways hospitals can preserve peer review but reduce threat of antitrust litigation); Tim A. Thomas, Annotation, *Denial by Hospital of Staff Privileges or Referrals to Physician or Other Health Care Practitioner as Violation of Sherman Act*, 89 A.L.R.Fed. 419 (1994) (topical digest of cases); *see also BCB Anesthesia Care, Ltd. v. Passavant Memorial Area Hosp. Ass'n*, 36 F.3d 664, 667–68 (7th Cir.1994) (exhaustive list of decisions with comment that in a vast majority of cases the plaintiff physicians have ultimately been denied relief).

The above authorities offer helpful background on the many theories of liability and

---

**4.** Section 1 of the Sherman Act states in pertinent part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal.

15 U.S.C. § 1.

**5.** Section 2 of the Sherman Act provides in pertinent part:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony.

15 U.S.C. § 2.

defenses in this area of the law. The issue before the Court, however, is a narrow one: whether plaintiffs have standing to assert claims under Sections 1 and 2 of the Sherman Act.

We begin with the general proposition that the health care profession is not immune from scrutiny under federal antitrust laws. *See FTC v. Indiana Fed'n of Dentists,* 476 U.S. 447, 465–66, 106 S.Ct. 2009, 2021–22, 90 L.Ed.2d 445 (1986) (upholding FTC's ruling that dentists violated antitrust laws by agreeing to withhold x-rays from insurers); *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 29–31, 104 S.Ct. 1551, 1567–68, 80 L.Ed.2d 2 (1984) (upholding exclusive contract between anesthesiologists and hospital); *Arizona v. Maricopa County Medical Soc'y,* 457 U.S. 332, 348–49, 102 S.Ct. 2466, 2475, 73 L.Ed.2d 48 (1982) (finding physicians' price-fixing agreement violative of antitrust laws). Nor can it fairly be said that a health care professional cannot under any circumstances state a cause of action under the Sherman Act against a hospital review committee for denial of staff privileges. *Summit Health Ltd. v. Pinhas,* 500 U.S. 322, 332, 111 S.Ct. 1842, 1848, 114 L.Ed.2d 366 (1991) (holding that physician's claim against peer review committee satisfied the interstate commerce jurisdictional requirements of the Sherman Act); *cf.* Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101–11152 (providing limited immunity to medical peer review process).

The civil remedies provision of federal antitrust laws is set forth in Section 4 of the Clayton Act, 15 U.S.C. § 15, which states in part as follows:

Any person who shall be injured in his business or his property by reason of anything forbidden in the antitrust laws may sue ... and recover threefold the damages by him sustained ...

Despite the broad language "any person," courts have not allowed " 'every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property.' " *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 535, 103 S.Ct. 897, 907, 74 L.Ed.2d 723 (1983) (quoting *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 477, 102 S.Ct. 2540, 2547, 73 L.Ed.2d 149 (1982)).

Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive acts made possible by the violation.

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (emphasis in original). It is not enough, however, that plaintiffs can show that defendants' conduct caused them injury. *Associated Gen. Contractors,* 459 U.S. at 535 n. 31, 103 S.Ct. at 907 n. 31. Plaintiffs also must show that their injuries were sufficiently direct and that they would be efficient enforcers of the antitrust laws. *See id.*

"[I]t [is] virtually impossible to announce a black letter rule that will dictate the result in every case" to determine this second requirement. *Id.* at 536, 103 S.Ct. at 908. Nevertheless, the following factors have been identified for examining whether a plaintiff has antitrust standing:

1. the causal connection between the antitrust violation and harm to the plaintiff and whether that harm was intended to be caused;

2. the nature of the plaintiff's alleged injury including the status of the plaintiff as consumer or competitor in the relevant market;

3. the directness or indirectness of the injury, and the related inquiry of whether the damages are speculative;

4. the potential for duplicative recovery or complex apportionment of damages; and

5. the existence of more direct victims of the alleged antitrust violation.

*Southaven Land Co. v. Malone & Hyde, Inc.,* 715 F.2d 1079, 1085 (6th Cir.1983) (citing *Associated Contractors,* 459 U.S. at 537–44, 103 S.Ct. at 908–12). Hence, to have antitrust standing, a plaintiff must show: (1) antitrust injury, and (2) under the factors set

forth above, that the directness of the injury was such that he would be an efficient enforcer of the antitrust laws.

Defendants cite several cases in which courts have held that health care professionals lacked standing to assert antitrust claims. *See Balaklaw v. Lovell,* 14 F.3d 793 (2nd Cir.1994) (affirming district court's summary judgment, holding that anesthesiologist lacked antitrust standing to challenge exclusive contract awarded to competing group of anesthesiologists); *Oksanen v. Page Memorial Hosp.,* 945 F.2d 696 (4th Cir.1991) (affirming district court's summary judgment, holding that physician whose privileges were revoked did not establish antitrust injury); *Levine v. Central Fla. Med. Affiliates, Inc.,* 864 F.Supp. 1175 (M.D.Fla.1994) (granting summary judgment, holding that internist lacked standing to assert antitrust claims challenging denial of staff privileges); *Rooney v. Med. Ctr. Hosp.,* 1994 U.S.Dist. LEXIS 7420 (S.D.Ohio Mar. 30, 1994) (Beckwith, J.) (granting summary judgment, holding that peer review was protected by Health Care Quality Improvement Act and that physician in any event lacked antitrust standing to challenge revocation of staff privileges).

Defendants argue that under the above authorities, plaintiffs cannot, as a matter of law, establish either antitrust injury or that they would be the most efficient enforcers of the antitrust laws. In particular, defendants point out that Dr. Leak has staff privileges at two other Columbus area hospitals, and that Dr. Leak has therefore not been hindered from competing in the market.

Plaintiffs acknowledge that Dr. Leak has staff privileges at other hospitals. They contend that they have nonetheless suffered antitrust injury. Plaintiffs argue, *inter alia,* that they have been foreclosed from offering services to that segment of patients whose

managed care insurance plans limit them to using Grant.

The Court does not find, and defendants do not argue, that the above authorities establish a *per se* rule that a health care professional could never have standing to assert antitrust claims arising from the denial of hospital staff privileges. In the circumstances presented in this case, however, the Court finds that plaintiffs have not suffered the kind of injury that antitrust laws were designed to prevent. Dr. Leak has staff privileges at two other Columbus area hospitals. Plaintiffs are therefore fully able to compete with others offering pain-related medical services in the Columbus area, including GAA and its members.

That some patients' managed care insurance plans may effectively limit them to services offered at Grant does not alter this conclusion. If plaintiffs' practice of pain medicine is, as Dr. Leak avers, truly more cost effective than traditional pain management used by anesthesiologists, then both the hospitals at which plaintiffs have privileges and plaintiffs have a competitive advantage over the defendant anesthesiologists. *See* Dr. Leak affidavit para. 24 & exhibit D. If pain medicine is more cost-effective than traditional pain management, then in an open and competitive marketplace managed care insurance plans should eventually be more inclined to designate those hospitals at which pain medicine is practiced. *See Capital Imaging Assoc., P.C. v. Mohawk Valley Medical Assoc., Inc.,* 725 F.Supp. 669, 673 (N.D.N.Y. 1989) (recognizing that the selective nature of managed care insurance plans is pro-competitive and reduces health care costs).[6] In these circumstances, the Court concludes that plaintiffs have failed to allege, or adduce evidence of,[7] the kind of injury that antitrust

---

**6.** The court of appeals affirmed the district court's later decision granting summary judgment in favor of the defendants. 791 F.Supp. 956 (S.D.N.Y.1992), *aff'd,* 996 F.2d 537 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993).

**7.** The Court reaches the same conclusion whether it examines the complaint, accepting as true all well pleaded facts, or whether it construes plaintiffs' evidence in the most favorable light.

There appears to be some tension concerning the proper procedural posture for the antitrust standing inquiry. For example, in *Rooney,* the learned judge stated that standing is determined from the complaint, but went on to conclude that plaintiffs had not adduced sufficient evidence on the standing issue to withstand summary judgment. 1994 U.S.Dist. LEXIS 7420 at *16–18; *see also BCB Anesthesia Care, Ltd. v. Passavant Memorial Area Hosp. Ass'n,* 36 F.3d at 669 (dissenting opinion by Cudahay, J., criticizing the

laws were designed to protect.[8]

The finding that plaintiffs have not suffered antitrust injury is dispositive. With respect to the second requirement for standing, however, it is worth noting that there are "'at least two more easily imagined efficient enforcers ... patients and the government.'" *Rooney,* 1994 U.S.Dist. LEXIS 7420 at *17 (quoting *Robles v. Humana Hosp. of Cartersville,* 785 F.Supp. 989, 999 (N.D.Ga.1992)).

For the above reasons the Court holds that plaintiffs lack standing to assert antitrust claims arising from defendants' failure to grant him staff privileges and their use of an exclusive contract. Defendants are therefore entitled to summary judgment in their favor on plaintiffs' federal antitrust claims.

## V.

Having determined that defendants are entitled to summary judgment on plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## VI.

Based on the above, the Court **GRANTS** defendants' summary judgment motions (Docs 19 and 20).

The Clerk shall enter a final judgment in favor of defendants, and against plaintiffs, dismissing plaintiffs' federal antitrust claims with prejudice and dismissing plaintiffs' state law claims without prejudice.

The Clerk shall remove this case from the Court's pending cases and motions lists.

**IT IS SO ORDERED.**

majority for upholding dismissal on the pleadings alone). The Court finds that adequate discovery took place in the instant case to determine standing. *See* Fed.R.Civ.P. 56(f).

8. The Court agrees with defendants that plaintiffs lack standing to seek treble damages as well as injunctive relief.