Alga Morales VILLALOBOS, Plaintiff,

v.

Miguel García LLORÉNS,
et al, Defendants.

No. CIV. 99–2034(HL).

United States District Court,
D. Puerto Rico.

March 20, 2002.

Alvaro R. Calderon–Jr., Hato Rey, for Alga Morales–Villalobos, plaintiffs.

Salvador Antonetti–Zequeira, Luis A. Oliver–Fraticelli, Fiddler, Gonzalez & Rodriguez, Samuel T. Cespedes–Sabater, McConnell Valdes, Juan M. Masini–Soler, Samuel T. Cespedes, McConnell Valdes, San Juan, for Miguel Garcia–Llorens, Jose Arturo Garcia–Llorens, Manuel Matos, Hospital Dr. Susoni Inc., Dr. Susoni Health Community Service Corp., Arecibo Respiratory Care Inc., defendants.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is a joint motion by Defendants to dismiss for failure to state a claim. Defendants are Dr. Miguel García

Lloréns, Dr. José Arturo García Lloréns, Dr. Manuel Matos, Hospital Dr. Susoni, Inc. ("HDS"), Dr. Susoni Health Community Services, Inc. ("Susoni Health"), and Arecibo Respiratory Care, Inc ("ARC"). The individual defendants are the sole shareholders of ARC. ARC, in turn, is the majority shareholder of HDS, which owns and administers a hospital in Arecibo. Susoni Health is a wholly-owned subsidiary of HDS. Susoni Health owns and operates the Hospital Regional de Arecibo. Plaintiff Alga Morales Villalobos ("Morales") is an anesthesiologist residing in Arecibo. She brings this claim pursuant to section 1 of the Sherman Antitrust Act.[1] She also brings Puerto Rico law claims under the Court's supplemental jurisdiction.[2]

Plaintiff alleges that in 1995 she became an employee of ARC and worked as an anesthesiologist; that, as an ARC employee, she was granted privileges to practice at Hospital Dr. Susoni; that ARC had an exclusive contract to provide anesthesiology services to Hospital Dr. Susoni; and that when Susoni Health began to manage the Hospital Regional, ARC was also given the exclusive contract to provide that hospital with anesthesiology services. Plaintiff further alleges that in January 1999 ARC fired her and that since the time of her termination she has been denied privileges to practice at Hospital Dr. Susoni and the regional hospital.

Plaintiff claims that ARC's exclusive contract is an unreasonable restraint of trade in violation of the antitrust laws. She claims that Dr. Emilio Ramos Escoda and other area physicians would use her as an anesthesiologist if she had access to Defendants' two hospitals, but that ARC's exclusive contract prevents her from having privileges at these hospitals. She also claims that this exclusive contract does not

---

1. 15 U.S.C.A. § 1 (West 1997).

2. 28 U.S.C.A. § 1367 (West 1993).

result in better patient care, but rather has resulted in a worsening of the quality of care for patients at the hospitals; that it prevents patients from receiving services from the anesthesiologist of their choice; that she is precluded from offering her services to her patients; and that anesthesia services at HDS are billed at higher amounts than in other sectors of the market.

She alleges that Arecibo patients have no viable alternatives for receiving elective surgery services and are thus forced to use ARC anesthesiologists; that Defendants' two hospitals are the only major medical institutions in the "Arecibo region" that are approved by Medicare and that treat Medicare patients; and that these two hospitals hold "complete market power in the hospital market" in the region. She claims that the geographic market where her services are barred is the "Health Region of Arecibo," as defined by the Puerto Rico Government's health reform program (known in Spanish as the "Reforma de Salud"). Patients in Arecibo and six surrounding towns who are covered by the Government's health plan must go to Arecibo for elective anesthesiology services.

Plaintiff alleges that she cannot practice at hospitals in the nearby Manatí region because the hospitals there also have exclusive contracts with anesthesiology groups and because the physicians in Arecibo who would refer patients to her do not have privileges at those hospitals. She further alleges that patients in Arecibo covered by the health reform may not receive treatment at San Juan hospitals for treatment. Moreover, the physicians who refer patients to her do not have privileges at San Juan area hospitals.

In their motion to dismiss, Defendants argue that Plaintiff has failed to adequately define the relevant market and that Plaintiff has not plead an antitrust injury and therefore she lacks standing.[3] Plaintiff has opposed the motion. For the reasons set forth below, the Court grants the motion to dismiss.

## DISCUSSION

In ruling on a Rule 12(b)(6) motion to dismiss, a court must accept all well-pled factual averments as true and must draw all reasonable inferences in the plaintiff's favor. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n*, 37 F.3d 12, 14 (1st Cir.1994). A court should not dismiss a complaint for failure to state a claim unless it is clear that the plaintiff will be unable to prove any set of facts which would entitle him to recovery. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir.1991). This deferential standard is not a "toothless tiger." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996). The court is not obliged to accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). For an anti-trust plaintiff to survive a Rule 12(b)(6) motion, she must plead the essential elements of her claim in more than vague and conclusory terms. *DM Research v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir.1999); *Double D Spotting Service, Inc. v. Supervalu, Inc.*, 136

---

**3.** After Plaintiff filed her original complaint, Defendants filed a joint motion to dismiss raising essentially these same arguments. In an earlier opinion and order, the Court granted Defendants' motion, but granted Plaintiff leave to file an amended complaint to correct the deficiencies in her complaint. Docket no. 28. Plaintiff then filed an amended complaint.

F.3d 554, 558 (8th Cir.1998); *Estate Constr. v. Miller & Smith Holding Co.*, 14 F.3d 213, 220–21 (4th Cir.1994).

### 1. Relevant market

■ The only provision of the antitrust laws to which Plaintiff cites in her complaint is section 1 of the Sherman Antitrust Act, which prohibits contracts, combinations or conspiracies in restraint of trade. 15 U.S.C.A. § 1. The specific conduct of which Plaintiff complains is Defendants' denying her medical privileges at their two hospitals in Arecibo. Courts have generally applied the rule of reason standard to antitrust claims involving hospital privileges and practices between doctors. *See Benjamin v. Aroostook Med. Ctr., Inc.*, 113 F.3d 1, 1 (1st Cir.1997); *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1093 & n. 9 (6th Cir.1996); *BCB Anesthesia Care v. Passavant Mem'l Area Hosp.*, 36 F.3d 664, 667 (7th Cir.1994); *Davies v. Genesis Med. Ctr.*, 994 F.Supp. 1078, 1097 (S.D.Iowa 1998). In its earlier opinion and order, the Court followed the lead of these cases and applied the rule of reason standard.[4] The parties have not challenged this approach, and the Court again applies this standard.

■ To state a section 1 claim under the rule of reason, a plaintiff must plead (1) concerted conduct by defendants (2) which was illegal, (3) which produced anticompetitive effects within the relevant markets, and (4) which proximately caused plaintiff's injury. *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 639 (3rd Cir. 1996). To properly plead a restraint of trade under the rule of reason, the complaint must also define the relevant market. *Double D*, 136 F.3d at 558–59; *BCB Anesthesia*, 36 F.3d at 667–69; *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 709 (4th Cir.1991). A relevant market has two elements: a product market and a geographic market. *Coastal Fuels of Puerto Rico v. Caribbean Petroleum,* 79 F.3d 182, 197 & n. 11 (1st Cir.1996); 2 Julian O. von Kalinowski, *Antitrust Laws and Trade Regulation* § 24.01[4], at 24–17 (2d ed.2000). The Court assumes that the product market in this case is anesthesiology services.

■ Defendants argue that Plaintiff has failed to define the geographic market. The relevant geographic market is the area in which sellers of the relevant product compete and in which buyers can practicably turn for alternate sources of supply. *Coastal Fuels*, 79 F.3d at 196; *Bathke v. Casey's Gen. Stores*, 64 F.3d 340, 345 (8th Cir.1995); 2 Von Kalinowski § 24.03[1], at 24–79. The geographic market describes where the consumers could practicably go, *not* where they actually go. *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 208 F.3d 655, 662 (8th Cir.2000). The geographic market corresponds to the commercial reality of the industry and represents an economically significant trade area. *Brown Shoe Co. v. United States*, 370 U.S. 294, 336–37, 82 S.Ct. 1502, 1530, 8 L.Ed.2d 510 (1962); *Davies*, 994 F.Supp. at 1100; 2 Von Kalinowski § 24.03[1], at 24–79 to 24–81. Courts have generally not accepted geographic market definitions that are unrealistically narrow. 2 Von Kalinowski § 24.03[1], at 24–82. A market definition must encompass the realities of competition. *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 183 (3rd Cir.1997); *Oksanen*, 945 F.2d at 709; *Weiss v. York Hosp.*, 745 F.2d 786, 826 (3rd Cir.1984); *Davies*, 994 F.Supp. at 1098.

In its previous opinion and order, the Court ordered Plaintiff to address in her amended complaint the issues of why she has drawn the geographic market as she has and why patients in Arecibo could not

---

4. Docket no. 28, at 3.

406

go to the San Juan metropolitan area for health care.[5] *See Morgenstern v. Wilson,* 29 F.3d 1291, 1296 (8th Cir.1994); *Davies,* 994 F.Supp. at 1100 (Deeming as critical the question of where consumers of anesthesiology services could reasonably turn for alternate care). In her amended complaint and in her opposition to the motion to dismiss, Plaintiff claims that the relevant geographic market is the "Health Region of Arecibo," as defined by the Puerto Rico Government's Reforma de Salud. She alleges that under this program, individuals in Arecibo and six surrounding towns who are covered by the Government's health plan must go to Arecibo for elective anesthesiology services. She further alleges that these patients may not go to San Juan for treatment. Her pleadings and amended complaint, however, fail to indicate how many or what percentage of Arecibo-area patients are covered by the Reforma de Salud. Presumably, those individuals covered by other health insurance plans would be free to go outside of the "Health Region of Arecibo" for health care treatment. Plaintiff offers no explanation as to why persons who have other forms of health insurance could not go as far away as San Juan for surgery.[6]

She further claims that physicians who refer patients to her do not have privileges at San Juan area hospitals. This argument is wholly besides the point. It may be unfortunate for Plaintiff that those physicians who are willing to use her as an anesthesiologist do not have privileges in San Juan hospitals. That does not mean, however, that patients in Arecibo are thereby prevented from going to San Juan for surgery. This claim only means that Plaintiff may have difficulty in getting referrals at San Juan hospitals.

Plaintiff has failed to adequately describe a relevant geographic market. Her allegations describe only the limitations on alternatives that confront patients who use the Puerto Rico Government's health care plan. She makes no attempt to define the size of this group or to establish what percentage of all patients in Arecibo are covered by the Government's health plan. Additionally, she does not explain what options other patients have. She simply does not explain what prevents these other patients from going to San Juan or other areas outside Arecibo for treatment. *See BCB Anesthesia,* 36 F.3d at 668 (Noting that complaint failed to explain why patients could not travel to hospitals in a city twenty-five miles away); *Morgenstern,* 29 F.3d at 1296–97 (Relevant market included city fifty-eight miles away); *Davies,* 994 F.Supp. at 1100–01 (Fifty-six miles); *Parikh v. Franklin Med. Ctr.,* 940 F.Supp. 395, 403 (D.Mass.1996) (Hospitals within 45–minute driving time). Plaintiff has failed to properly define a relevant geographic market. *See Double D,* 136 F.3d at 560–61; *BCB Anesthesia,* 36 F.3d at 668 ("Nothing in the complaint suggest that patients are foreclosed from going elsewhere in the unlikely event that they are involved in pricing decisions."); *Davies,* 994 F.Supp. at 1101 (Allegations in the complaint must adequately identify a relevant geographic market, taking into consideration "blatant geographic and commercial realities"). Therefore, the Court grants Defendants' motion.[7]

---

5. Docket no. 28, at 6.

6. Plaintiff does allege that approximately half of the total revenue received by Defendants' hospitals comes from Medicare. It is unclear how this fact, if true, affects where patients practicably could go for surgery services. This allegation simply is not relevant to the definition of a geographic market.

7. Although Plaintiff nowhere cites to section 2 of the Sherman Act in her amended complaint, she does allege that Defendants have monopolized or attempted to monopolize anesthesiology services. Any section 2 claim suffers from the same infirmity as her section 1 claim. That is, a section 2 claim also requires that the relevant geographic market be defined. *See Coastal Fuels,* 79 F.3d at 197;

*2. Anti-trust injury*

 Defendants' second argument is that Plaintiff lacks anti-trust standing or injury. In the anti-trust context, standing has a different scope from the "case or controversy" requirement of constitutional standing. *Todorov v. DCH Healthcare Auth.,* 921 F.2d 1438, 1448 (11th Cir.1991). Standing in anti-trust involves more than a mere injury in fact; it also includes prudential considerations intended to promote the effective enforcement of the anti-trust laws. *RSA Media, Inc. v. AK Media Group, Inc.,* 260 F.3d 10, 13 (1st Cir.2001); *Serpa Corp. v. McWane, Inc.,* 199 F.3d 6, 10 (1st Cir.1999). An anti-trust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). For a plaintiff to be able to invoke the anti-trust laws, her injury must be " 'the type of loss that the claimed violations ... would be likely to cause.' " *Id.* (quoting *Zenith Radio Corp. v. Hazeltine Research,* 395 U.S. 100, 125, 89 S.Ct. 1562, 1577, 23 L.Ed.2d 129 (1969)). The anti-trust laws are not intended to provide a remedy for every injury that a plaintiff could conceivably trace to conduct which she claims violates the anti-trust laws. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters,* 459 U.S. 519, 534, 103 S.Ct. 897, 906, 74 L.Ed.2d 723 (1983) (quoting *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 263 n. 14, 92 S.Ct. 885, 891 n. 14, 31 L.Ed.2d 184 (1972)). A court determining whether a plaintiff has anti-trust standing should consider the following factors:

*Gilbuilt Homes, Inc. v. Continental Homes of New England,* 667 F.2d 209, 211 (1st Cir. 1981); *Benjamin v. Aroostook Med. Ctr.,* 937 F.Supp. 957, 966–67 n. 6 (D.Me.1996), *aff'd,* 113 F.3d 1 (1st Cir.1997). As discussed in

(1) the causal connection between the alleged antitrust violation and harm to the plaintiff; (2) an improper motive; (3) the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws ("antitrust injury"); (4) the directness with which the alleged market restraint caused the asserted injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex apportionment of damages.

*RSA Media,* 260 F.3d at 14 (quoting *Serpa,* 199 F.3d at 10). Throughout this analysis, a court should be guided by the tenet that the anti-trust laws are intended to protect competition, not individual competitors. *Brunswick,* 429 U.S. at 488, 97 S.Ct. at 697; *Seacoast Motors v. Daimler-Chrysler Motors Corp.,* 271 F.3d 6, 10 (1st Cir.2001); *SMS Systems v. Digital Equip.,* 188 F.3d 11, 26 (1st Cir.1999).

 In the present case, Plaintiff lacks anti-trust standing for the following reasons. First, as discussed in part 1. above, she has not properly plead a violation of the anti-trust laws. Thus, absent a violation, there can be no standing. Second, even if the Court were to assume that Plaintiff's amended complaint did plead conduct which violated the anti-trust laws, her claim would fail for the following reasons. The scope of anti-trust standing is limited in order to prevent parties from litigating cases which are inapposite to the purposes of the anti-trust laws. *Serpa,* 199 F.3d at 10. Plaintiff's claimed injury is that Defendants' exclusive contract prevents her from obtaining privileges and practicing at Arecibo's two hospitals.

part 1. of this opinion, Plaintiff has failed to define a geographic market. Thus, the Court also dismisses any section 2 claims that Plaintiff has made.

Generally, a hospital's decision regarding staffing or privileges will not give a disgruntled physician an anti-trust injury. *See Mathews,* 87 F.3d at 641; *BCB Anesthesia,* 36 F.3d at 669 ("A staffing decision does not itself constitute an antitrust injury."); *Balaklaw v. Lovell,* 14 F.3d 793, 797–800 (2nd Cir.1994); *Oksanen,* 945 F.2d at 708; *Todorov,* 921 F.2d at 1453–55; *Korshin v. Benedictine Hosp.,* 34 F.Supp.2d 133, 138–39 (N.D.N.Y.1999); *Davies,* 994 F.Supp. at 1095–96; *Ginzburg v. Mem'l Healthcare Sys., Inc.,* 993 F.Supp. 998, 1014–20 (S.D.Tex.1997); *Feldman v. Palmetto Gen. Hosp., Inc.,* 980 F.Supp. 467, 469 (S.D.Fla.1997); *Baglio v. Baska,* 940 F.Supp. 819, 829–30 (W.D.Pa. 1996), *aff'd,* 116 F.3d 467 (3rd Cir.1997) (Unpublished opinion); *Leak v. Grant Med. Ctr.,* 893 F.Supp. 757, 763 (S.D.Ohio 1995), *aff'd,* 103 F.3d 129 (6th Cir.1996) (Unpublished opinion); *Purgess v. Sharrock,* 806 F.Supp. 1102, 1106–08 (S.D.N.Y. 1992). Otherwise, every physicians' employment grievance could be elevated to the status of an anti-trust case. *Balaklaw,* 14 F.3d at 801 n. 17; *Oksanen,* 945 F.2d at 708. The fact that a hospital's decision may oblige the plaintiff physician to practice medicine elsewhere is not enough to establish an antitrust injury. *Oksanen,* 945 F.2d at 708; *Ginzburg,* 993 F.Supp. at 1017; *Bellam v. Clayton County Hosp. Auth.,* 758 F.Supp. 1488, 1494 (N.D.Ga. 1990); *see also Nurse Anesthetists,* 208 F.3d at 661 ("That plaintiffs have chosen to work elsewhere is not an antitrust injury, for at most it reflects only harm to individual competitors, not to competition.").

In the present case, Plaintiff's alleged harm is that she cannot practice at Defendants' two Arecibo hospitals. Plaintiff may be disappointed that she cannot offer her services at these hospitals, but this is not the type of harm that normally constitutes an anti-trust injury. Moreover, she appears to have other employment options available to her. Her amended complaint mentions hospitals in Manatí and San Juan. She alleges that she cannot practice in these areas because the surgeons who would normally use her services do not have privileges there. She does not explain, however, why she cannot seek referrals from those physicians who do have privileges for the hospitals of San Juan and Manatí. She also complains that she cannot work in Manatí because the hospitals there have exclusive contracts with anesthesiology groups. Plaintiff fails to explain what is preventing her from seeking employment with these groups. She may be forced to go elsewhere to practice her profession, but this is, at most, an inconvenience. It is not an anti-trust injury.

▮▮▮▮▮ Plaintiff further alleges that Defendants' exclusive contract has had an anti-competitive effect on the market. Specifically, she asserts that anesthesia services at HDS are billed at higher amounts than in other sectors of the market. She also claims that this exclusive contract has resulted in a worsening of the quality of care for patients at the Arecibo hospitals and that it prevents patients from receiving services from the anesthesiologist of their choice. These alleged injuries, however, were suffered by patients, *not* by Plaintiff. In anti-trust standing, the court must "search for the proper plaintiff to enforce the anti-trust laws." *Todorov,* 921 F.2d at 1448; *J. Allen Ramey, M.D., Inc. v. Pac. Found. for Med. Care,* 999 F.Supp. 1355, 1360–61 (S.D.Cal. 1998). In a case such as the present one, the party more suited to protect the rights of the patients would be either the patients themselves or the Government. *See Todorov,* 921 F.2d at 1454–55; *Baglio,* 940 F.Supp. at 830; *Leak,* 893 F.Supp. at 764; *Addis v. Holy Cross Health Sys. Corp.,* 1995 WL 914278, at *8 (N.D.Ind. July 6, 1995); *Purgess,* 806 F.Supp. at 1107; *Ro-*

*bles v. Humana Hosp. Cartersville,* 785 F.Supp. 989, 999 (N.D.Ga.1992). Plaintiff is not the proper plaintiff to challenge these alleged anti-trust violations.

Based on all of the above, the Court finds that Plaintiff lacks an appropriate antitrust injury that would give her standing to bring this case. Thus, the Court grants Defendants' motion to dismiss on this alternate ground as well.[8]

WHEREFORE, the Court **grants** Defendants' motion (docket no. 32) and dismisses Plaintiff's anti-trust claims.[9] Judgment shall be entered accordingly.

---

8. This ruling on a lack of an anti-trust injury also applies to any claim Plaintiff may be bringing under section 2.

9. Plaintiff also brings Puerto Rico law claims under the Court's supplemental jurisdiction.

The Court dismisses those claims without prejudice. *See Houlton Citizens' Coalition v. Town of Houlton,* 175 F.3d 178, 192 (1st Cir.1999).