# United States Court of Appeals

## For the First Circuit

No. 02-1499

ALGA MORALES-VILLALOBOS,
Plaintiff, Appellant,

v.

MIGUEL GARCIA-LLORENS; JOSE ARTURO GARCIA-LLORENS; MANUEL MATOS;
HOSPITAL DR. SUSONI, INC.; DR. SUSONI HEALTH COMMUNITY SERVICES,
INC.; ARECIBO RESPIRATORY CARE, INC.,

Defendants, Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Hector M. Laffitte, U.S. District Judge]

Before

Lynch, Circuit Judge,
Howard, Circuit Judge,
and Shadur,[*] Senior District Judge.

Alvaro R. Calderon, Jr., with whom John E. Mudd was on the
brief, for appellant.

Luis A. Oliver, with whom Fiddler González & Rodríguez LLP,
McConnell Valdés, and Roberto C. Quiñones Rivera were on the brief,
for appellees.

January 14, 2003

---

[*]Of the Northern District of Illinois, sitting by designation.

**LYNCH**, **Circuit Judge**.  Dr. Alga Morales-Villalobos, an anesthesiologist, brought antitrust claims under 15 U.S.C. § 1 (2000) (Section 1 of the Sherman Anti-Trust Act) and pendent state law claims against her former employers, the overlapping directors of an anesthesiology group and two hospitals.  She alleged that the exclusive dealing arrangement between the hospitals and the group prevented her from competing to offer her services.  She also alleged that the defendants engaged in a group boycott to exclude her from the anesthesiology group, which had an exclusive contract at local hospitals, and subsequently denied her certification to practice at those hospitals.

The defendants moved to dismiss for failure to state a claim, which the court allowed, with leave to amend.  Morales-Villalobos then filed an amended complaint amplifying her allegations.  The district court granted the motion to dismiss the amended complaint, holding that Morales-Villalobos had failed to sufficiently allege the relevant geographic market and an antitrust injury.  Morales-Villalobos v. García-Lloréns, 193 F. Supp. 2d 401, 405-09 (D.P.R. 2002)(opinion and order).  We reverse, though sympathetic to the difficulties posed by this area of law.

I.

We review de novo a district court's dismissal of a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Chute v. Walker, 281 F.3d 314, 318 (1st Cir. 2002).  "We

-2-

accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, [may] justify recovery on any cognizable theory." Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002). "The issue is whether the complaint states a claim under the Sherman Act, assuming the factual allegations to be true and indulging to a reasonable degree a plaintiff who has not yet had an opportunity to conduct discovery." DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999).

The facts as described in plaintiff's complaint are as follows. Morales-Villalobos is an anesthesiologist living in the town of Arecibo, approximately 56 miles west of San Juan. In July 1995 she became an employee of Arecibo Respiratory Care, Inc., ("ARC") one of the co-defendants. ARC provided anesthesiology services under an exclusive contract to the two hospitals in Arecibo performing surgeries: Hospital Dr. Susoni ("HDS") and Hospital Regional de Arecibo Cayetano Coll y Toste, which was managed by a subsidiary of HDS, Dr. Susoni Health Community Services. This subsidiary later purchased that hospital outright. The complaint provides no information on the length of the exclusive contract. The co-defendants -- Miguel García-Lloréns, José Arturo García-Lloréns, and Manuel Matos -- are the sole shareholders of ARC and members of the Board of Directors of HDS.

ARC is, in turn, the majority shareholder of HDS. José Arturo García-Lloréns and Manuel Matos are themselves certified anesthesiologists.

Morales-Villalobos alleges that José Arturo García-Lloréns, Miguel García-Lloréns, and Manuel Matos were all involved -- as HDS directors -- in the decision to award an exclusive contract to ARC; indeed, no other HDS board members participated in the decision. The complaint alleges that the exclusive contract between ARC and HDS was motivated by corrupt self-dealing between the directors and stockholders of the two corporations, several of whom are themselves anesthesiologists and presumably benefitted from the exclusive agreement. The inference may be drawn that the reasons for the arrangement, accordingly, were not competitive. Morales-Villalobos received medical privileges as a physician at HDS in September 1995, which appear to have extended to the Hospital Regional de Arecibo as well. In September 1997, her privileges were renewed at HDS and the Hospital Regional de Arecibo for a further two years.

On December 1, 1998, Morales-Villalobos was fired from her position at ARC by Miguel García-Lloréns, the President of ARC, despite the absence of patient complaints (as alleged in the complaint, which we must take to be true). The following year, Morales-Villalobos was not recertified for privileges at HDS. Because of ARC's exclusive arrangement with HDS, once plaintiff was

fired by ARC, she could not find work as an anesthesiologist at either hospital in Arecibo. HDS also rejected a request by Dr. Ramos Escoda, Morales-Villalobos's former husband and a surgeon who practices in Arecibo, to have her administer anesthesia to his private surgery patients at HDS. Other physicians in the area have also indicated their willingness to use Morales-Villalobos's services, but are prevented from doing so at these hospitals. Moreover, HDS prevented Morales-Villalobos from entering the medical facility by placing fliers on the walls and posting security guards at the hospital doors.

Morales-Villalobos alleges that HDS and the Hospital Regional de Arecibo have "complete market power" in the Arecibo region, because they are able to offer a complete line of medical services, and because they are the only hospitals approved as Medicare providers. They are the only hospitals within the Health Region of Arecibo, as defined by the Health Reform Program of the Government of Puerto Rico, which provides medical care for indigent patients. Patients covered under the Health Reform Program are not allowed to seek services in San Juan or other cities in Puerto Rico. Morales-Villalobos alleges she provides Medicare services to patients of Dr. Escoda. Half of the total revenue received by the Arecibo hospitals comes from Medicare, which provides health coverage for individuals 65 years old or older, 42 U.S.C. § 1395c

-5-

(2002). An inference may be drawn that such patients are less likely to be able to make a 56-mile trip to hospitals in San Juan.

The other health region relatively near Arecibo is the Manatí Health Region, which encompasses the city of Manatí, in which there are three hospitals at which surgery is performed. Morales-Villalobos says it would be impossible for her to practice in Manatí, because all of these hospitals have exclusive contracts with anesthesiology groups. Perhaps more importantly, her referring physicians in the Arecibo region do not have privileges in Manatí.

Morales-Villalobos also alleges that the quality of patient care has worsened as a result of ARC's exclusive contract. She cites understaffing, with one anesthesiologist routinely expected to cover two geographically-separated hospitals, and nurses administering anesthesia without the supervision of an anesthesiologist. She also alleges an increase in cost relative to other sectors of the market.

Morales-Villalobos alleges that she has been blocked from practicing anesthesiology in Arecibo, her hometown, and that she has also suffered damages to her professional reputation as a result of her termination by ARC. She alleges there are doctors who wish to use her as an anesthesiologist but cannot because she has been denied privileges at the only hospitals in Arecibo. She characterizes herself as a competitor of ARC. She requests either

renewal of her medical privileges at HDS facilities and an order requiring defendants to allow her to administer to elective private patients, or a declaration that the exclusive contract is illegal, economic damages, and an order to open HDS to Medicare providers.

## II.

The district court dismissed Morales-Villalobos's complaint on two bases: first, that she failed to adequately define the geographic market; and second, that she lacked antitrust standing. Neither issue can be evaluated without reference to plaintiff's theories of recovery. At this most preliminary stage, the bare bones of two different theories are suggested by plaintiff's complaint. The first is that, as an anesthesiologist in Arecibo, she is a direct competitor of ARC and is precluded by the exclusive dealing arrangement from offering her services to the only two hospitals in Arecibo. The second is that the defendants have engaged in a group boycott, in a horizontal arrangement excluding her through expulsion, which precludes her from offering her services. Neither theory is actionable as a per se violation.

The district court dismissed the claim first for lack of a proper geographic market. Here, the plaintiff's claim is that, as a seller of services, she was foreclosed from the outlets reasonably available. For an anesthesiologist, the primary outlets for her services are ordinarily hospitals and clinics. Of course, even substantial foreclosure in a relevant market is not

necessarily unlawful, see Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 328-29 (1961), but whether the restraint is horizontal or vertical, substantial foreclosure is ordinarily a requirement for a seller arguing that she or he has been unreasonably excluded from opportunities to sell. Id.

In this instance, the extent of foreclosure depends greatly on whether the plaintiff's market is anesthesiology services within Arecibo, or whether the market encompasses the neighboring town of Manatí, or whether it includes other parts or all of Puerto Rico, or whether it also includes part or all of the continental United States. Depending on the circumstances, foreclosure might range from nearly complete (in Arecibo) to a trivial percentage (if the market is the entire United States). There is no mechanical rule -- the issue depends on circumstances, see 2A P.E. Areeda & H. Hovenkamp, Antitrust Law ¶ 570, at 342-44 (2d ed. 2002) -- and while there are arguments for a larger market, the matter cannot be resolved on the face of the complaint.

The district court also dismissed on grounds that the plaintiff lacked antitrust standing. The doctrine of antitrust standing is occasionally used to describe but-for causation, see SAS of P.R., Inc. v. P.R. Tel. Co., 48 F.3d 39, 43 (1st Cir. 1995), and perhaps more often to exclude indirectly injured parties who have suffered actual injury but as a result of violations that directly injured intermediate entities, e.g., Hanover Shoe, Inc. v.

United Shoe Mach. Corp., 392 U.S. 481, 494 (1968) (excluding indirect purchasers). Perhaps the most common use of the phrase is to describe cases where there is actual injury from an antitrust violation but the impact on the would-be plaintiff results from what closer analysis reveals to be a pro-competitive transaction. E.g., Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488 (1977).

Here it is not apparent, on a motion to dismiss, why Morales-Villalobos lacks antitrust standing. She claims to be directly injured by exclusion from ARC and, in consequence of that exclusion and the exclusive dealing arrangement, by exclusion from the two Arecibo hospitals. There is thus alleged but-for causation, a direct injury to plaintiff as a supplier, and no obvious reason why -- if the exclusive dealing or group boycott charges amount to a violation -- the injury to her would not be of the kind that antitrust laws are intended to address. If some reason does exist, defendants can develop it on remand.

Of course, the defendants may be expected to argue that quality control and other legitimate concerns justify whatever exclusive dealing arrangements exist, as well as the exclusion of the plaintiff from ARC.[1] But these are matters that go to the

---

[1] Going beyond the allegations of the complaint, defendants' memorandum in support of their motion to dismiss states that plaintiff was fired because "in [ARC's] principals' considered view, she was not performing her duties adequately." Yet defendants chose to test the complaint by Rule 12(b)(6) motion, and

question of whether the arrangements are violations of the antitrust laws and not whether the plaintiff is a proper party to vindicate those claims. As to whether the arrangements are anti-competitive, this is obviously a factual matter that -- given the allegations -- can hardly be resolved on the face of the complaint.

It is true that many of these antitrust cases brought by excluded medical care providers are ultimately decided against plaintiffs, usually after summary judgment or trial. <u>See, e.g.</u>, <u>Mathews</u> v. <u>Lancaster Gen. Hosp.</u>, 87 F.3d 624 (3d Cir. 1996); <u>Oksanen</u> v. <u>Page Mem'l Hosp.</u>, 945 F.2d 696 (4th Cir. 1991); <u>Benjamin</u> v. <u>Aroostook Med. Ctr.</u>, 937 F. Supp. 957 (D. Me. 1996); <u>Leak</u> v. <u>Grant Med. Ctr.</u>, 893 F. Supp. 757 (S.D. Ohio 1995). But that does not mean all such claims are hopeless and should be resolved by motion to dismiss the complaint.

**<u>Reversed</u>**. Costs are awarded to Morales-Villalobos.

---

the district court judge quite appropriately considered the motion under the Rule 12(b)(6) standards.